1  LAW OFFICES OF DALE K. GALIPO
   Dale K. Galipo, Esq. (SBN 144074)
2  dalekgalipo@yahoo.com
   Hang D. Le, Esq. (SBN 293450)
3  hlee@galipolaw.com
   21800 Burbank Boulevard, Suite 310
4  Woodland Hills, CA  91367
   Telephone:   (818) 347-3333
5  Facsimile:   (818) 347-4118

6

7

8              **UNITED STATES DISTRICT COURT**

9              **CENTRAL DISTRICT OF CALIFORNIA**

10

11  JAMES WRIGHT,                    Case No. 5:24-cv-01123-JLS-JC

12            Plaintiff,             **FIRST AMENDED COMPLAINT FOR DAMAGES**

13       vs.
                                     1. Unreasonable Search and
14  COUNTY OF SAN BERNARDINO;           Seizure—Detention and Arrest (42
15  and DOES 1-10, inclusive,           U.S.C. § 1983)
                                     2. Unreasonable Search and
16            Defendants.              Seizure—Excessive Force (42
                                        U.S.C. § 1983)
17                                   3. Unreasonable Search and
18                                      Seizure—Denial of Medical Care
                                        (42 U.S.C. § 1983)
19                                   4. Municipal Liability – Ratification
20                                      (42 U.S.C. § 1983)
                                     5. Municipal Liability – Inadequate
21                                      Training (42 U.S.C. § 1983)
22                                   6. Municipal Liability –
                                        Unconstitutional Custom or Policy
23                                      (42 U.S.C. § 1983)
24
                                     **DEMAND FOR JURY TRIAL**
25

26

27

28

FIRST AMENDED COMPLAINT FOR DAMAGES

## COMPLAINT FOR DAMAGES

JAMES WRIGHT brings this Complaint against Defendants COUNTY OF SAN BERNARDINO, and DOES 1-10, inclusive, and hereby alleges as follows:

## INTRODUCTION

1.     This civil rights and state tort action seeks compensatory and punitive damages for serious physical injuries sustained by Plaintiff JAMES WRIGHT ("WRIGHT" or "Plaintiff") as a result of force used against him by County of San Bernardino Sheriff's Deputies on June 7, 2022.  The use of force was excessive and unreasonable because WRIGHT posed no immediate threat to any person and was unarmed at the time the use of force.  As a result of the officers' use of force, WRIGHT endured pain and suffering and sustained serious physical injuries. WRIGHT also experienced and continues to experience emotional distress from the incident and the physical injuries he sustained. Also, as a result of the use of force, WRIGHT has incurred medical expenses, has lost earnings, has suffered a reduced earning capacity, and expects to incur future medical expenses and lose future earnings.

## JURISDICTION AND VENUE

2.     This case arises under 42 U.S.C. § 1983 and 1988 as well as California law.  This court has subject matter jurisdiction over Plaintiff's federal question and civil rights claims pursuant to 28 U.S.C. §§ 1331 and 1343.  This Court has jurisdiction over Plaintiff's supplemental state law claims under 28 U.S.C. § 1367 as those claims arise out of the same transactions and occurrences as Plaintiff's federal question claims.

3.     Venue is proper in the Central District of California pursuant to 28 U.S.C. § 1391(b)(2) because all incidents, events, and occurrences giving rise to this action occurred in the City and the County of San Bernardino, California.

# PARTIES

4.      At all relevant times, Plaintiff JAMES WRIGHT was and is an individual residing in the City of Encino, California.

5.      At all relevant times, Defendant COUNTY OF SAN BERNARDINO ("COUNTY") is and was a municipal corporation existing under the laws of the State of California. COUNTY is a chartered subdivision of the State of California with the capacity to be sued. COUNTY is responsible for the actions, omissions, policies, procedures, practices, and customs of its various agents and agencies, including the San Bernardino County Sheriff's Department ("SBSD") and its agents and employees.  At all relevant times, Defendant COUNTY was responsible for assuring that the actions, omissions, policies, procedures, practices, and customs of the and its employees and agents complied with the laws of the United States and of the State of California.  At all relevant times, COUNTY was the employer of Defendants DOE DEPUTIES.

6.      At all relevant times, Defendants DOES 1-5 ("DOE DEPUTIES") are deputies for SBSD who were acting under color of law within the course and scope of their duties as deputies for the SBSD.  DOES 1-5 were acting with the complete authority and ratification of their principal, Defendant COUNTY.

7.      Defendants DOES 6-10 are managerial, supervisorial, and policymaking employees of SBSD, who at all relevant times was acting under color of law within the course and scope of their duties as managerial, supervisorial, and policymaking employees for the SBSD. DOES 6-10 was acting with the complete authority and ratification of their principal, Defendant COUNTY.

8.      On information and belief, at all relevant times DOES 1-10 were residents of the County of San Bernardino.

9.      In doing the acts and failing and omitting to act as hereinafter described, DOE DEPUTIES were acting on the implied and actual permission and consent of DOES 6-10 and the COUNTY.

FIRST AMENDED COMPLAINT FOR DAMAGES

1        10.     In doing the acts and failing and omitting to act as hereinafter

2    described, Defendants DOES 6-10 was acting on the implied and actual permission

3    and consent of the COUNTY.

4        11.     The true names and capacities, whether individual, corporate,

5    association, or otherwise of Defendants DOES 1-10, inclusive, are unknown to

6    Plaintiff, who otherwise sues these Defendants by such fictitious names.  Plaintiff

7    will seek leave to amend this complaint to show the true names and capacity of

8    these Defendants when they have been ascertained.  Each of the fictitiously-named

9    Defendants is responsible in some manner for the conduct or liabilities alleged

10   herein.

11       12.     At all times mentioned herein, each and every Defendant was the agent

12   of each and every other Defendant and had the legal duty to oversee and supervise

13   the hiring, conduct, and employment of each and every Defendant.

14       13.     All of the acts complained of herein by Plaintiff against Defendants

15   were done and performed by said Defendants by and through their authorized

16   agents, servants, and/or employees, all of whom at all relevant times herein were

17   acting within the course, purpose, and scope of said agency, service, and/or

18   employment capacity.  Moreover, Defendants and their agents ratified all of the acts

19   complained of herein.

20       14.     All Defendants who are natural persons, including DOES 1-10, are

21   sued individually and in their official capacities as officers, sergeants, captains,

22   commanders, supervisors, and/or civilian employees, agents, policy makers, and

23   representatives for their respective principal, COUNTY.

24       15.     Plaintiff suffered injuries as a direct and proximate result of the actions

25   DOE DEPUTIES.

26

27

28

FIRST AMENDED COMPLAINT FOR DAMAGES

## **FACTS COMMON TO ALL CLAIMS FOR RELIEF**

16. Plaintiff repeats and realleges each and every allegation in paragraphs 1 through 15 of this Complaint with the same force and effect as if fully set forth herein.

17. On June 7, 2021, Plaintiff WRIGHT was driving his vehicle when DOE DEPUTIES initiated a traffic stop on Plaintiff WRIGHT and his vehicle. Plaintiff WRIGHT pulled over near the intersection of Bear Valley Road and Hesperia Road in Victorville, California. On information and belief, Plaintiff WRIGHT had not committed any traffic infraction or any crime at the time DOE DEPUTIES initiated the traffic stop. On information and belief, DOE DEPUTIES had no reasonable suspicion to detain or probable cause to arrest Plaintiff WRIGHT.

18. Once Plaintiff WRIGHT pulled over, DOE DEPUTIES issued several commands to WRIGHT. Plaintiff WRIGHT had his hands on the steering wheel pursuant to commands and was following DOE DEPUTIES' commands when he was struck by lethal and less-lethal rounds.

19. At all relevant times, Plaintiff WRIGHT did not pose an immediate threat to the safety of DOE DEPUTIES or others. Plaintiff WRIGHT was unarmed and following DOE DEPUTIES' commands when he was struck by lethal and less-lethal rounds.

20. After Plaintiff WRIGHT was struck by lethal and less-lethal rounds, DOE DEPUTIES handcuffed WRIGHT and held him prone against the ground, with DOE DEPUTIES' knees on WRIGHT's back for a prolonged period of time.

21. After Plaintiff WRIGHT was seriously injured by being struck by lethal and less-lethal rounds, Plaintiff WRIGHT was denied prompt medical attention. The delay of medical care to Plaintiff WRIGHT caused him extreme physical and emotional pain and suffering and contributed to his damages.

22. As a result of the use of excessive force, Plaintiff WRIGHT sustained serious physical injuries and has incurred financial loss and expenses in the form of

past and future loss of earnings, decreased earning capacity, and past and future medical expenses. Also as a result of this incident, Plaintiff WRIGHT has endured pain and suffering and emotional and mental distress stemming from the physical injuries.

## FIRST CLAIM FOR RELIEF

**Unreasonable Search and Seizure—Detention and Arrest (42 U.S.C. § 1983)**

(Against Defendants DOE DEPUTIES)

23.     Plaintiff repeats and re-alleges each and every allegation in paragraphs 1 through 22 of this Complaint with the same force and effect as if fully set forth herein.

24.     Defendants DOE DEPUTIES had no objectively reasonable or specifically articulable factual basis to suspect that Plaintiff was involved in the commission of any crime, nor did Defendants DOE DEPUTIES have any confirmation that Plaintiff had committed any crime, posed any threat to anyone, and did not see Plaintiff in possession of any illegal objects, contraband, or weapons.

25.     Defendants DOE DEPUTIES detained Plaintiff without reasonable suspicion and arrested him without probable cause by pulling Plaintiff over, striking Plaintiff's body with lethal and less-lethal rounds, and holding Plaintiff prone on the ground while exerting weight and force on Plaintiff's back for a prolonged period of time. The scope and manner of Defendants DOE DEPUTIES' detention and arrest of Plaintiff was unreasonable.

26.     The conduct of Defendants DOE DEPUTIES violated Plaintiff's right to be secure in his person against unreasonable searches and seizures as guaranteed to Plaintiff under the Fourth Amendment to the United States Constitution and applied to state actors by the Fourteenth Amendment.

27.    The conduct of Defendants DOE DEPUTIES was willful, wanton, malicious, and done with reckless disregard for the rights and safety of Plaintiff and therefore warrants the imposition of exemplary and punitive damages as to Defendants DOE DEPUTIES.

28.    As a result of their misconduct, Defendants DOE DEPUTIES are liable for Plaintiff's injuries, either because they were integral participants in the unreasonable seizure or because they failed to prevent these violations.

29.    Plaintiff seeks compensatory damages and attorney's fees under this claim.

## SECOND CLAIM FOR RELIEF

### Unreasonable Search and Seizure—Excessive Force (42 U.S.C. § 1983)

(Against Defendants DOE DEPUTIES)

30.    Plaintiff repeats and realleges each and every allegation in paragraphs 1 through 29 of this Complaint with the same force and effect as if fully set forth herein.

31.    DOE DEPUTIES and DOE OFFICERS used excessive and unreasonable force when they struck Plaintiff with lethal and less-lethal rounds and held Plaintiff prone against the ground while applying force and weight to Plaintiff's back. Defendant DOE DEPUTIES' unjustified use of force deprived Plaintiff of his right to be secure in his person against unreasonable searches and seizures as guaranteed to Plaintiff under the Fourth Amendment to the United States Constitution and applied to state actors by the Fourteenth Amendment.

32.    At all relevant times, Plaintiff did not forcibly resist nor did he pose an immediate threat to the safety of DOE DEPUTIES or anyone else.

33.    Defendants DOE DEPUTIES' use of force was excessive and objectively unreasonable and contrary to basic police officer training because Plaintiff posed no immediate threat to the safety of any person at the time.

34.    Defendants DOE DEPUTIES did not exhaust all reasonable available alternative measures prior using force on Plaintiff. Defendants DOE DEPUTIES failed provide adequate commands and warnings prior to using force, despite it be feasible to do so.

35.    Plaintiff suffered serious and permanent physical injuries as a result of the use of force.

36.    At all relevant times, Defendants DOE DEPUTIES were acting under color of state law.

37.    As a result of their misconduct as described above, Defendants DOE DEPUTIES are liable for Plaintiff's injuries, either because they were integral participants in the use of excessive force or because they failed to prevent these violations.

38.    The conduct of Defendants DOE DEPUTIES was willful, wanton, malicious, and done with reckless disregard for the rights and safety of Plaintiff and therefore warrants the imposition of exemplary and punitive damages as to Defendants DOE DEPUTIES.

39.    Plaintiff seeks compensatory damages for the violations of his rights, including damages for past and future medical expenses, past and future loss of earnings and decreased earning capacity, physical injuries, past and future pain and suffering, emotional and mental distress stemming from the physical injuries, humiliation, and disfigurement.  Plaintiff also seeks punitive damages, costs, and attorney's fees under this claim.

//
//
//
//
//

FIRST AMENDED COMPLAINT FOR DAMAGES

### THIRD CLAIM FOR RELIEF

**Unreasonable Search and Seizure—Denial of Medical Care (42 U.S.C. § 1983)**

(Against Defendants DOE DEPUTIES)

40.     Plaintiff repeats and realleges each and every allegation in paragraphs 1 through 39 of this Complaint with the same force and effect as if fully set forth herein.

41.     After the detention, arrest, and use of force, Plaintiff was denied prompt medical attention while he was seriously injured and in pain. The delay of medical care to Plaintiff caused him extreme physical and emotional pain and suffering and contributed to his damages.

42.      The denial of medical care by Defendants DOE DEPUTIES deprived Plaintiff of his right to be secure in his person against unreasonable searches and seizures as guaranteed to him under the Fourth Amendment to the United States Constitution and applied to state actors by the Fourteenth Amendment.

43.     The delay in medical attention contributed to Plaintiff's pain and suffering and was a contributing cause of Plaintiff's injuries and his mental and emotional distress.

44.     Defendant DOE DEPUTIES knew that failure to provide timely medical treatment to Plaintiff could result in further significant injury or the unnecessary and wanton infliction of pain, but disregarded that serious medical need, causing Plaintiff great bodily harm.

45.     The conduct of Defendants DOE DEPUTIES was willful, wanton, malicious, and done with reckless disregard for the rights and safety of Plaintiff and therefore warrants the imposition of exemplary and punitive damages as to DOE DEPUTIES.

46.     At all relevant times, Defendants DOE DEPUTIES were acting under color of state law.

47.     As a result of their misconduct as described above, Defendants DOE DEPUTIES are liable for Plaintiff's injuries, either because they were integral participants or because they failed to prevent these violations.

48.     Plaintiff seeks compensatory damages for the violations of his rights, including damages for past and future medical expenses, past and future loss of earnings and decreased earning capacity, physical injuries, past and future pain and suffering, emotional and mental distress stemming from the physical injuries, humiliation, and disfigurement.  Plaintiff also seeks punitive damages, costs, and attorney's fees under this claim.

## FOURTH CLAIM FOR RELIEF

### Municipal Liability – Ratification (42 U.S.C. § 1983)

(Against Defendants COUNTY and DOES 6-10)

49.     Plaintiff repeats and realleges each and every allegation in paragraphs 1 through 48 of this Complaint with the same force and effect as if fully set forth herein.

50.     At all relevant times, Defendants DOE DEPUTIES were acting under color of state law.

51.     The acts of Defendants DOE DEPUTIES as described above, including strike Plaintiff with lethal and less-lethal rounds, deprived Plaintiff of his rights under the United States Constitution.

52.     Upon information and belief, a final policymaker for COUNTY, acting under color of law, who had final policymaking authority concerning the acts of DOE DEPUTIES, ratified (or will ratify) Defendant DOE DEPUTIES' acts and the bases for them.  Upon information and belief, the final policymaker knew of and specifically approved of (or will specifically approve of) Defendant DOE DEPUTIES' acts, which include use of excessive force against Plaintiff as well as the unreasonable detention and arrest of Plaintiff and denial of medical care.

53.     Upon information and belief, a final policymaker for COUNTY has determined (or will determine) that the acts of DOE DEPUTIES were "within policy."

54.     The following are only a few example of cases where the involved deputies were not disciplined, reprimanded, retrained, suspended, or otherwise penalized in connection with the underlying acts giving rise to the below lawsuits, indicating that the County of San Bernardino routinely ratifies such behavior:

(a)     In *V.R. v. County of San Bernardino, et al.*, case number 5:19-cv-01023-JGB-SP, Plaintiffs argued that the use of less-lethal and lethal munitions against decedent, Juan Ramos, was unreasonable and excessive. Mr. Ramos was experiencing a mental health episode when deputies used less-lethal and lethal weapons against him. In 2022, a jury returned a $4.5 million verdict against Defendant County of San Bernardino and its involved deputies.

(b)     In *M.A., et al. v. County of San Bernardino*, Case No.: 8:20-cv-00567-JFW-SHK, C.D. Cal., plaintiffs alleged that the 2019 fatal shooting of Darrell Allen, Jr. was excessive and unreasonable when deputies intentionally shot Mr. Allen several times without warning. Mr. Allen was not an immediate threat of death or serious bodily injury. In 2021, the case settled for a high seven-figure settlement. On information and belief, no deputy was retrained, provided additional training, disciplined, suspended, or terminated as a result of this incident.

(c)     In *Brown v. County of San Bernardino*, case number 5:20-cv-01658, Plaintiffs alleged that San Bernardino County Sheriff's Deputies used excessive and unreasonable force when they shot him several times and when he never threatened any person with

a weapon or vehicle. In 2021, the parties settled the case for a high six-figure settlement. Upon information and belief, no deputy was retrained, provided additional training, disciplined, suspended, or terminated as a result of this settlement.

(d)     In *Arrona, et al. v. County of San Bernardino et al*., case number 5:21- cv-00389-DSF-KK, plaintiffs argued that the involved San Bernardino County Sheriff's Deputies used excessive physical and less-lethal force against plaintiffs in their home. The case recently settled for an undisclosed amount.

(e)     In *Alvarado v. County of San Bernardino et al.*, case number 5:20-cv- 00592-DMG-SHK, plaintiffs argued that the County Correctional Deputies failed to provide medical and mental health care to Perla Alvarado, who was in their custody in the West Valley Detention Center. The failure to provide medical care resulted in her death. The parties recently settled for an undisclosed amount.

(f)     In *Estate of Merlin Factor v. County of San Bernardino, et al.*, case number 5:14-cv-01289-DMG-AGR(x), Plaintiffs argued that the use of deadly force against the unarmed Merlin Factor was unreasonable. The police reports showed that Mr. Factor was unarmed, and the parties settled the case for a high six-figure settlement.

(g)     In *Ranero v. County of San Bernardino*, Case No. 5:16-cv- 02655, C.D. Cal., the COUNTY settled with a man involved in a non-fatal police shooting that resulted in serious injuries including the loss of use of the victim's left leg. The COUNTY ratified the deputies' conduct, finding the shooting to be "within

1    policy," and failed to reprimand, retrain, or otherwise penalize

2    the deputies for their conduct.

3    (h)   In *Archibald v. County of San Bernardino*, case number 5-16-cv-

4    1128, Plaintiff argued that the involved San Bernardino County

5    Sheriff's deputy used deadly force against the unarmed

6    Nathanael Pickett when he posed no immediate threat. The jury

7    in that case returned a $33.5 million verdict against Defendant

8    County of San Bernardino and its involved officer. The

9    COUNTY ratified the deputy's conduct, found the detention and

10   shooting to be "within policy," and failed to reprimand, retrain,

11   or otherwise penalize the deputy for his conduct. The COUNTY

12   negligently retained the deputy following this shooting, which

13   resulted in a subsequent shooting by the same deputy of another

14   unarmed man, for which the COUNTY settled with the victim

15   prior to any litigation.

16   (i)   In *T.M. (Phillips) v. County of San Bernardino, et al.*, case

17   number 5:18-cv-2532-R-PLA, Plaintiff alleged that the shooting

18   of Lajuana Phillips was excessive and unreasonable.  In 2018,

19   the parties settled the case for a seven-figure settlement.

20   (j)   In *Young v. County of San Bernardino, et al.*, case number 5:15-

21   CV- 01102-JGB-SP, Plaintiff argued that the 2014 shooting of

22   Keivon Young was excessive and unreasonable.  In 2016 a jury

23   agreed and awarded a high six-figure verdict in Plaintiff's favor.

24   (k)   Numerous prior incidents at County of San Bernardino detention

25   centers also support Plaintiffs' claims for Municipal Liability in

26   this case. For example, between 2014 and 2016, thirty-three

27   County inmates filed lawsuits alleging torture by the County and

28   its deputies involving violations of 42 USC 1983. (Case Nos.

-13-

5:15-cv-02515-JGB-DTB) Johnny Alcala and 14 other inmates sued the County, and David Smith filed his own lawsuit (5:15-cv-02513-JGB-DTB), going back to years of torture by County correctional officers. Moreover, the ACLU also brought a class action lawsuit alleging unconstitutional practice of LGBT inmates at the County's WVDC. (Case No. 14-2171-JGB-SP). The ACLU's lawsuit addressed the trouble of WVDC in denying services in unconstitutional manner, including failure to make safety checks as mandated by Title 15, and the suit represented approximately 600 individuals.

55.    By reason of the aforementioned acts and omissions, Plaintiff suffered serious bodily injury, humiliation, pain and suffering, disfigurement, and past and future emotional and mental distress, and financial loss.

56.    Accordingly, Defendants COUNTY and DOES 6-10 each are liable to Plaintiff for compensatory damages under 42 U.S.C. § 1983.

57.    Plaintiff seeks compensatory damages for the violations of his rights, including damages for past and future medical expenses, past and future loss of earnings and decreased earning capacity, physical injuries, past and future pain and suffering, emotional and mental distress stemming from the physical injuries, humiliation, and disfigurement.  Plaintiff also seeks costs and attorney's fees under this claim.

## FIFTH CLAIM FOR RELIEF

### Municipal Liability – Failure to Train (42 U.S.C. § 1983)

(Against Defendants COUNTY and DOES 6-10)

58.    Plaintiff repeats and realleges each and every allegation in paragraphs 1 through 58 of this Complaint with the same force and effect as if fully set forth herein.

-14-

59.   At all relevant times, Defendants DOE DEPUTIES were acting under color of state law.

60.   The acts of Defendants DOE DEPUTIES deprived Plaintiff of his rights under the United States Constitution.

61.   The training policies of Defendant COUNTY were not adequate to train its officers to handle the usual and recurring situations with which they must deal.

62.   Defendant COUNTY was deliberately indifferent to the obvious consequences of its failure to train its police officers adequately.  Specifically, COUNTY failed to adequately train DOE DEPUTIES with respect to detentions and arrests, tactics, use of less-lethal options, and the use of deadly force, including determining whether the use of force and deadly force is reasonable and appropriate under the circumstances.

63.   The negligent and unjustified use of force by DOE DEPUTIES was a result of the negligent training by the Defendants COUNTY and DOES 6-10, who failed to train COUNTY deputies as to proper police tactics, proper use of force, proper use of deadly force, and proper detention and arrest procedures. The Defendant COUNTY and DOES 6-10 were responsible for the training of COUNTY deputies to ensure that the actions, procedures, and practices of said Defendants complied with Peace Officer Standards and Training (POST) training standards regarding proper police tactics, and proper use of deadly force.

64.   The Defendants COUNTY and DOE DEPUTIES negligently failed to train COUNTY deputies to comply with POST training standards regarding proper police tactics, proper use of force, proper use of deadly force, and proper detention and arrest procedures. POST was established by the California Legislature in 1959 to set minimum training standards for California police officers. The training policies of COUNTY were not adequate to train its police officers to handle the usual and recurring situations with residents that said Defendants have contact with.

-15-

65.     The training policies of the COUNTY were deficient in the following ways:

(a)     COUNTY failed to properly train COUNTY sheriff's deputies so that deputies do not escalate their interactions with residents and do not overreact and resort to use of force or deadly force when the use of force was not necessary.

(b)     COUNTY failed to properly train COUNTY sheriff's deputies so that Defendants do not permit fear to reach the point of becoming unreasonable fear, and not objectively reasonable, which would result in the use of force to cause that would cause serious injuries to residents, such as Plaintiff. This was a part of COUNTY negligent failure to train DOE DEPUTIES to properly and adequately assess the need to use force against Plaintiff.

(c)     COUNTY failed to properly train COUNTY failed to properly train COUNTY sheriff's deputies, such as DOE DEPUTIES, in proper police tactics, such as situational awareness so that sheriff's deputies do not utilize negligent tactics, such as DOE DEPUTIES herein. Because of this lack of proper training by COUNTY, DOE DEPUTIES did not use proper police tactics in handling of the contact with Plaintiff, and instead used defective police tactics, including the lack of a situational awareness. These defective tactics resulted in serious injuries to Plaintiff.

(d)     COUNTY failed to properly train COUNTY sheriff's deputies, such as DOE DEPUTIES, in the importance of effective communication prior to using force.

(e)     Because of the lack of proper training by COUNTY, DOE DEPUTIES did not use effective communication prior to and during the use of force against Plaintiff. The ineffective

1                         communication of information by DOE DEPUTIES prior to, and

2                         during the incident, resulted in serious injuries to Plaintiff.

3        66.     The failure of Defendant COUNTY to provide adequate training caused

4 the deprivation of Plaintiff's rights; that is, Defendant COUNTY's failure to train is

5 so closely related to the deprivation of Plaintiff's rights as to be the moving force

6 that caused the ultimate injury.

7        67.     The following are only a few examples of continued conduct by

8 sheriff's deputies working for the County of San Bernardino, which indicate the

9 County of San Bernardino's failure to properly train its sheriff's deputies:

10                     (a)      In *V.R. v. County of San Bernardino, et al.*, case number 5:19-cv-

11                            01023-JGB-SP, Plaintiffs argued that the use of less-lethal and

12                            lethal munitions against decedent, Juan Ramos, was

13                            unreasonable and excessive. Mr. Ramos was experiencing a

14                            mental health episode when deputies used less-lethal and lethal

15                            weapons against him. In 2022, a jury returned a $4.5 million

16                            verdict against Defendant County of San Bernardino and its

17                            involved deputies.

18                     (b)      In *M.A., et al. v. County of San Bernardino*, Case No.: 8:20-cv-

19                            00567-JFW-SHK, C.D. Cal., plaintiffs alleged that the 2019 fatal

20                            shooting of Darrell Allen, Jr. was excessive and unreasonable

21                            when deputies intentionally shot Mr. Allen several times without

22                            warning. Mr. Allen was not an immediate threat of death or

23                            serious bodily injury. In 2021, the case settled for a high seven-

24                            figure settlement. On information and belief, no deputy was

25                            retrained, provided additional training, disciplined, suspended, or

26                            terminated as a result of this incident.

27                     (c)      In *Brown v. County of San Bernardino*, case number 5:20-cv-

28                            01658, Plaintiffs alleged that San Bernardino County Sheriff's

FIRST AMENDED COMPLAINT FOR DAMAGES

Deputies used excessive and unreasonable force when they shot him several times and when he never threatened any person with a weapon or vehicle. In 2021, the parties settled the case for a high six-figure settlement. Upon information and belief, no deputy was retrained, provided additional training, disciplined, suspended, or terminated as a result of this settlement.

(d)   In *Arrona, et al. v. County of San Bernardino et al.*, case number 5:21- cv-00389-DSF-KK, plaintiffs argued that the involved San Bernardino County Sheriff's Deputies used excessive physical and less-lethal force against plaintiffs in their home. The case recently settled for an undisclosed amount.

(e)   In *Alvarado v. County of San Bernardino et al.*, case number 5:20-cv- 00592-DMG-SHK, plaintiffs argued that the County Correctional Deputies failed to provide medical and mental health care to Perla Alvarado, who was in their custody in the West Valley Detention Center. The failure to provide medical care resulted in her death. The parties recently settled for an undisclosed amount.

(f)   In *Estate of Merlin Factor v. County of San Bernardino, et al.*, case number 5:14-cv-01289-DMG-AGR(x), Plaintiffs argued that the use of deadly force against the unarmed Merlin Factor was unreasonable. The police reports showed that Mr. Factor was unarmed, and the parties settled the case for a high six-figure settlement.

(g)   In *Ranero v. County of San Bernardino*, Case No. 5:16-cv-02655, C.D. Cal., the COUNTY settled with a man involved in a non-fatal police shooting that resulted in serious injuries including the loss of use of the victim's left leg. The COUNTY

FIRST AMENDED COMPLAINT FOR DAMAGES

ratified the deputies' conduct, finding the shooting to be "within policy," and failed to reprimand, retrain, or otherwise penalize the deputies for their conduct.

(h) In *Archibald v. County of San Bernardino*, case number 5-16-cv-1128, Plaintiff argued that the involved San Bernardino County Sheriff's deputy used deadly force against the unarmed Nathanael Pickett when he posed no immediate threat. The jury in that case returned a $33.5 million verdict against Defendant County of San Bernardino and its involved officer. The COUNTY ratified the deputy's conduct, found the detention and shooting to be "within policy," and failed to reprimand, retrain, or otherwise penalize the deputy for his conduct. The COUNTY negligently retained the deputy following this shooting, which resulted in a subsequent shooting by the same deputy of another unarmed man, for which the COUNTY settled with the victim prior to any litigation.

(i) In *T.M. (Phillips) v. County of San Bernardino, et al.*, case number 5:18-cv-2532-R-PLA, Plaintiff alleged that the shooting of Lajuana Phillips was excessive and unreasonable.  In 2018, the parties settled the case for a seven-figure settlement.

(j) In *Young v. County of San Bernardino, et al.*, case number 5:15-CV- 01102-JGB-SP, Plaintiff argued that the 2014 shooting of Keivon Young was excessive and unreasonable.  In 2016 a jury agreed and awarded a high six-figure verdict in Plaintiff's favor.

(k) Numerous prior incidents at County San Bernardino detention centers also support Plaintiffs' claims for Municipal Liability in this case. For example, between 2014 and 2016, thirty-three County inmates filed lawsuits alleging torture by the County and

-19-

its deputies involving violations of 42 USC 1983. (Case Nos. 5:15-cv-02515-JGB-DTB) Johnny Alcala and 14 other inmates sued the County, and David Smith filed his own lawsuit (5:15-cv-02513-JGB-DTB), going back to years of torture by County correctional officers. Moreover, the ACLU also brought a class action lawsuit alleging unconstitutional practice of LGBT inmates at the County's WVDC. (Case No. 14-2171-JGB-SP). The ACLU's lawsuit addressed the trouble of WVDC in denying services in unconstitutional manner, including failure to make safety checks as mandated by Title 15, and the suit represented approximately 600 individuals.

68.     By failing to provide adequate training to COUNTY sheriff's deputies, including DOE DEPUTIES, COUNTY acted with an intentional, reckless, and callous disregard for Plaintiff's constitutional rights. Defendants DOES 6-10, each of their actions were willful, wanton, oppressive, malicious, fraudulent, and extremely offensive and unconscionable to any person of normal sensibilities.

69.     By reason of the aforementioned acts and omissions, Plaintiff suffered serious bodily injury, humiliation, pain and suffering, disfigurement, and past and future emotional and mental distress, and financial loss.

70.     Accordingly, Defendants COUNTY and DOES 6-10 each are liable to Plaintiff for compensatory damages under 42 U.S.C. § 1983.

71.     Plaintiff seeks compensatory damages for the violations of his rights, including damages for past and future medical expenses, past and future loss of earnings and decreased earning capacity, physical injuries, past and future pain and suffering, emotional and mental distress stemming from the physical injuries, humiliation, and disfigurement.  Plaintiff also seeks punitive damages, costs, and attorney's fees under this claim.

## SIXTH CLAIM FOR RELIEF

**Municipal Liability – Unconstitutional Custom or Policy (42 U.S.C. § 1983)**

(Against Defendants COUNTY and DOES 6-10)

72.    Plaintiff repeats and realleges each and every allegation in paragraphs 1 through 72 of this Complaint with the same force and effect as if fully set forth herein.

73.    At all relevant times, Defendants DOE DEPUTIES were acting under color of state law.

74.    When Defendants DOE DEPUTIES detained and arrested Plaintiff, struck Plaintiff with lethal and less-lethal rounds, held Plaintiff prone against the ground while exerting force and weight on Plaintiff's back for a prolonged period of time, and denied him timely medical attention, they acted pursuant to an expressly adopted official policy/ies or a longstanding practice(s) or custom of the Defendant COUNTY respectively.

75.    On information and belief, COUNTY made a formal decision that the use of deadly and non-deadly force against Plaintiff was found to be "within policy" of the COUNTY's Sheriff's Department protocols, notwithstanding that Plaintiff was not an imminent threat to DOE DEPUTIES at the moment DOE DEPUTIES used deadly and non-deadly force against Plaintiff. This manifests a deliberate indifference to the civil rights of the residents of the COUNTY.

76.    Defendant COUNTY and DOES 6-10, ratified, acquiesced, and condoned the use of deadly and non-deadly force against Plaintiff by DOE DEPUTIES.

77.    On information and belief, Defendants DOE DEPUTIES were not disciplined, reprimanded, retrained, suspended, or otherwise penalized in connection with the detention, arrest and use of force against Plaintiff, which evidences ratification and acquiescence thereof and thereto.

78.     Defendants COUNTY and DOES 6-10, together with other COUNTY policymakers and supervisors, maintained, inter alia, the following unconstitutional customs, practices, and policies:

(a)     Using excessive force, including excessive deadly force;

(b)     Providing inadequate training regarding the use of deadly force;

(c)     Employing and retaining as officers individuals whom Defendant COUNTY at all times material herein knew or reasonably should have known had dangerous propensities for abusing their authority and for using excessive force;

(d)     Inadequately supervising, training, controlling, assigning, and disciplining COUNTY sheriff's deputies, and other personnel, whom Defendant COUNTY knew or in the exercise of reasonable care should have known had the aforementioned propensities and character traits;

(e)     Maintaining grossly inadequate procedures for reporting, supervising, investigating, reviewing, disciplining and controlling misconduct by COUNTY sheriff's deputies;

(f)     Failing to adequately discipline COUNTY sheriff's deputies for the above-referenced categories of misconduct, including "slaps on the wrist," discipline that is so slight as to be out of proportion to the magnitude of the misconduct, and other inadequate discipline that is tantamount to encouraging misconduct;

(g)     Announcing that unjustified shootings are "within policy," including shootings that were later determined in court to be unconstitutional;

(h)     Even where shootings are determined in court to be unconstitutional, refusing to discipline, terminate, or retrain the officers involved;

(i)    Encouraging, accommodating, or facilitating a "blue code of silence," "blue shield," "blue wall," "blue curtain," "blue veil," or simply "code of silence," pursuant to which police officers do not report other officers' errors, misconduct, or crimes. Pursuant to this code of silence, if questioned about an incident of misconduct involving another officer, while following the code, the officer being questioned will claim ignorance of the other officers' wrongdoing;

(j)    Maintaining a policy of inaction and an attitude of indifference towards soaring numbers of police shootings, including by failing to discipline, retrain, investigate, terminate, and recommend officers for criminal prosecution who participate in shootings of unarmed people.

79.    It is the policy, custom, and practice of Defendant COUNTY to not objectively investigate complaints of previous incidents of wrongful shootings, excessive use of force, including deadly force, illegal arrests, falsification of police reports, and instead, to officially claim that such incidents are justified and proper.

80.    The policies, customs, and practices of Defendant COUNTY do in fact encourage COUNTY sheriff's deputies such as DOE DEPUTIES to believe that wrongful shootings, excessive use of deadly and non-deadly force against residents, illegal arrests, fabrication of police reports, is permissible and will be permitted by Defendant COUNTY. Defendants DOE DEPUTIES were aware of the policies, customs, and practices of Defendant COUNTY and used excessive force against Plantiff. These policies and customs of the COUNTY were the driving force that caused DOE DEPUTIES to use excessive force against Plaintiff.

81.    Other systemic deficiencies, policies, customs, and practices which indicated, and continue to indicate, a deliberate indifference to the violations of the

FIRST AMENDED COMPLAINT FOR DAMAGES

1   civil rights by the COUNTY sheriff's deputies, such as DOE DEPUTIES, that

2   Defendant COUNTY was aware of, and has condoned and ratified include:

3         (a)   Preparation of investigative reports designed to vindicate the use

4               of excessive use of force, regardless of whether such force was

5               justified;

6         (b)   Preparation of investigative reports which uncritically rely solely

7               on the word of sheriff's deputies and police officers involved in

8               the assault, battery, excessive use of force incidents and which

9               systematically fail to credit testimony by non-police witnesses;

10        (c)   Preparation of investigative reports which omit factual

11              information and physical evidence which contradicts the

12              accounts of the officers involved;

13        (d)   Issuance of public statements exonerating officers involved in

14              such incidents prior to the completion of investigations of the

15              excessive use of force;

16        (e)   Failure to objectively and independently review investigative

17              reports by responsible superior officers for accuracy or

18              completeness and acceptance of conclusions which are

19              unwarranted by the evidence of the wrongful shooting, assault,

20              excessive use of deadly force, or which contradict such evidence.

21        82.   Defendants COUNTY and DOES 6-10, together with various other

22  officials, whether named or unnamed, had either actual or constructive knowledge

23  of the deficient policies, practices and customs alleged in the paragraphs above.

24  Despite having knowledge as stated above, these defendants condoned, tolerated and

25  through actions and inactions thereby ratified such policies.  Said defendants also

26  acted with deliberate indifference to the foreseeable effects and consequences of

27  these policies with respect to the constitutional rights of Plaintiff and other

28  individuals similarly situated.

83.     By perpetrating, sanctioning, tolerating and ratifying the outrageous conduct and other wrongful acts, COUNTY and DOES 6-10 acted with intentional, reckless, and callous disregard for the life and constitutional rights of Plaintiff. Furthermore, the policies, practices, and customs implemented, maintained, and still tolerated by Defendants COUNTY and DOES 6-10 were affirmatively linked to and were a significantly influential force behind the injuries of Plaintiff.

84.     The following are only a few examples of cases where San Bernardino County Sheriff's Department Deputies were not disciplined, reprimanded, retained, suspended, or otherwise penalized in connection with the underlying acts giving rise to the below lawsuits, which indicates that the COUNTY routinely ratifies such behavior, fails to train its Deputies, and maintains a practice of allowing such behavior:

> (a)   In *V.R. v. County of San Bernardino, et al.*, case number 5:19-cv-01023-JGB-SP, Plaintiffs argued that the use of less-lethal and lethal munitions against decedent, Juan Ramos, was unreasonable and excessive. Mr. Ramos was experiencing a mental health episode when deputies used less-lethal and lethal weapons against him. In 2022, a jury returned a $4.5 million verdict against Defendant County of San Bernardino and its involved deputies.

> (b)   In *M.A., et al. v. County of San Bernardino*, Case No.: 8:20-cv-00567-JFW-SHK, C.D. Cal., plaintiffs alleged that the 2019 fatal shooting of Darrell Allen, Jr. was excessive and unreasonable when deputies intentionally shot Mr. Allen several times without warning. Mr. Allen was not an immediate threat of death or serious bodily injury. In 2021, the case settled for a high seven-figure settlement. On information and belief, no deputy was retrained, provided

additional training, disciplined, suspended, or terminated as a result of this incident.

(c) In *Brown v. County of San Bernardino*, case number 5:20-cv-01658, Plaintiffs alleged that San Bernardino County Sheriff's Deputies used excessive and unreasonable force when they shot him several times and when he never threatened any person with a weapon or vehicle. In 2021, the parties settled the case for a high six-figure settlement. Upon information and belief, no deputy was retrained, provided additional training, disciplined, suspended, or terminated as a result of this settlement.

(d) In *Arrona, et al. v. County of San Bernardino et al.*, case number 5:21- cv-00389-DSF-KK, plaintiffs argued that the involved San Bernardino County Sheriff's Deputies used excessive physical and less-lethal force against plaintiffs in their home. The case recently settled for an undisclosed amount.

(e) In *Alvarado v. County of San Bernardino et al.*, case number 5:20-cv- 00592-DMG-SHK, plaintiffs argued that the County Correctional Deputies failed to provide medical and mental health care to Perla Alvarado, who was in their custody in the West Valley Detention Center. The failure to provide medical care resulted in her death. The parties recently settled for an undisclosed amount.

(f) In *Estate of Merlin Factor v. County of San Bernardino, et al.*, case number 5:14-cv-01289-DMG-AGR(x), Plaintiffs argued that the use of deadly force against the unarmed Merlin Factor was unreasonable. The police reports showed that Mr. Factor

FIRST AMENDED COMPLAINT FOR DAMAGES

1    was unarmed, and the parties settled the case for a high six-figure

2    settlement.

3    (g)    In *Ranero v. County of San Bernardino*, Case No. 5:16-cv-

4         02655, C.D. Cal., the COUNTY settled with a man involved in a

5         non-fatal police shooting that resulted in serious injuries

6         including the loss of use of the victim's left leg. The COUNTY

7         ratified the deputies' conduct, finding the shooting to be "within

8         policy," and failed to reprimand, retrain, or otherwise penalize

9         the deputies for their conduct.

10    (h)    In *Archibald v. County of San Bernardino*, case number 5-16-cv-

11         1128, Plaintiff argued that the involved San Bernardino County

12         Sheriff's deputy used deadly force against the unarmed

13         Nathanael Pickett when he posed no immediate threat. The jury

14         in that case returned a $33.5 million verdict against Defendant

15         County of San Bernardino and its involved officer. The

16         COUNTY ratified the deputy's conduct, found the detention and

17         shooting to be "within policy," and failed to reprimand, retrain,

18         or otherwise penalize the deputy for his conduct. The COUNTY

19         negligently retained the deputy following this shooting, which

20         resulted in a subsequent shooting by the same deputy of another

21         unarmed man, for which the COUNTY settled with the victim

22         prior to any litigation.

23    (i)    In *T.M. (Phillips) v. County of San Bernardino, et al.*, case

24         number 5:18-cv-2532-R-PLA, Plaintiff alleged that the shooting

25         of Lajuana Phillips was excessive and unreasonable.  In 2018,

26         the parties settled the case for a seven-figure settlement.

27    (j)    In *Young v. County of San Bernardino, et al.*, case number 5:15-

28         CV- 01102-JGB-SP, Plaintiff argued that the 2014 shooting of

-27-

Keivon Young was excessive and unreasonable.  In 2016 a jury agreed and awarded a high six-figure verdict in Plaintiff's favor.

(k)  Numerous prior incidents at County San Bernardino detention centers also support Plaintiffs' claims for Municipal Liability in this case. For example, between 2014 and 2016, thirty-three County inmates filed lawsuits alleging torture by the County and its deputies involving violations of 42 USC 1983. (Case Nos. 5:15-cv-02515-JGB-DTB) Johnny Alcala and 14 other inmates sued the County, and David Smith filed his own lawsuit (5:15-cv-02513-JGB-DTB), going back to years of torture by County correctional officers. Moreover, the ACLU also brought a class action lawsuit alleging unconstitutional practice of LGBT inmates at the County's WVDC. (Case No. 14-2171-JGB-SP). The ACLU's lawsuit addressed the trouble of WVDC in denying services in unconstitutional manner, including failure to make safety checks as mandated by Title 15, and the suit represented approximately 600 individuals.

85.     Furthermore, the policies, practices, and customs implemented and maintained and still tolerated by Defendant COUNTY and DOES 6-10 were affirmatively linked to and were significantly influential force behind the injuries of Plaintiff.

86.     By reason of the aforementioned acts and omissions, Plaintiff suffered serious bodily injury, humiliation, pain and suffering, disfigurement, and past and future emotional and mental distress, and financial loss.

87.     Accordingly, Defendants COUNTY DOES 6-10 each are liable to Plaintiff for compensatory damages under 42 U.S.C. § 1983.

88.     Plaintiff seeks compensatory damages for the violations of his rights, including damages for past and future medical expenses, past and future loss of

earnings and decreased earning capacity, physical injuries, past and future pain and suffering, emotional and mental distress stemming from the physical injuries, humiliation, and disfigurement.  Plaintiff also seeks punitive damages, costs, and attorney's fees under this claim.

//

//

//

//

//

//

//

//

//

//

//

//

FIRST AMENDED COMPLAINT FOR DAMAGES

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff JAMES WRIGHT, requests entry of judgment in his favor and against Defendants the County of San Bernardino and DOES 1-10, inclusive, as follows:

      A.   For compensatory damages in an amount to be proven at trial, including damages for his serious physical injuries, for his pain and suffering, for past and future medical expenses, for past and future financial loss, and past and future mental and emotional distress;

      B.   For punitive damages against the individual defendants in an amount to be proven at trial;

      C.   For statutory damages;

      D.   For interest;

      E.   For reasonable costs of this suit and attorneys' fees; and

      F.   For such further other relief as the Court may deem just, proper, and appropriate.

DATED: July 29, 2024          LAW OFFICES OF DALE K. GALIPO

By_____/s/ Hang D. Le_____
     Dale K. Galipo
     Hang D. Le
     Attorneys for Plaintiff

-30-

FIRST AMENDED COMPLAINT FOR DAMAGES

1

## **DEMAND FOR JURY TRIAL**

2       Plaintiff hereby demands a trial by jury.

3

4    DATED:  July 29, 2024                LAW OFFICES OF DALE K. GALIPO

5

6

7                                        By_____/s/ Hang D. Le_____
                                            Dale K. Galipo
8                                           Hang D. Le
                                            Attorneys for Plaintiff
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-31-