LAW OFFICES OF DALE K. GALIPO
Dale K. Galipo, Esq. (SBN 144074)
dalekgalipo@yahoo.com
Hang D. Le, Esq. (SBN 293450)
hlee@galipolaw.com
21800 Burbank Boulevard, Suite 310
Woodland Hills, CA  91367
Telephone:   (818) 347-3333
Facsimile:   (818) 347-4118

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES WRIGHT,<br><br>             Plaintiff,<br>     vs.<br><br>COUNTY OF SAN BERNARDINO; and DOES 1-10, inclusive,<br><br>             Defendants. | Case No. 5:24-cv-01123-JLS-JC<br><br>*Honorable Josephine L. Staton*<br>*Hon. Mag. Judge Jacqueline Chooljian*<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANT COUNTY OF SAN BERNARDINO'S MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT**<br><br>Date:    December 27, 2024<br>Time:    10:30 a.m.<br>Dept:    8A |

# Table of Contents

I.   INTRODUCTION ...................................................................................... 1

II.  PROCEDURAL HISTORY ....................................................................... 1

III. LEGAL STANDARD ................................................................................ 3

IV. DISCUSSION ............................................................................................ 4

    A.   Plaintiff's Allegations Regarding Prior Excessive Force Lawsuits are Sufficient to Allege Monell Liability ..................................................... 4

    B.   Plaintiff Has Sufficiently Pled His Fourth Claim for Municipal Liability – Inadequate Training ................................................................ 8

    C.   Plaintiff Has Sufficiently Pled His Sixth Claim for Municipal Liability – Unconstitutional Custom or Policy ...................................... 10

V.  IF THE COURT FINDS BASIS TO GRANT TO DEFENDANT'S MOTION TO DISMISS, LEAVE TO AMEND SHOULD BE GRANTED ................................................................................................ 11

VI. CONCLUSION ....................................................................................... 12

Cases

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009) .................................................................................................3

*Bell Atlantic Corp. v. Twombly,*
    550 U.S. 544 (2007) .................................................................................................3

*Blankenhorn v. City of Orange,*
    485 F.3d 463 (9th Cir. 2007).....................................................................................9

*Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Systems, Inc.,*
    637 F.3d 1047 (9th Cir. 2011)................................................................................3,6

*Capogrosso v. Sup. Ct.,*
    588 F.3d 180 (3rd Cir. 2009).....................................................................................3

*City of Canton v. Harris,*
    489 U.S. 378 (1989) .................................................................................................9

*Conley v. Gibson,*
    355 U.S. 41 (1957) ...................................................................................................4

*Davis v. Passman,*
    442 U.S. 228 (1979) .................................................................................................3

*Erickson v. Pardus,*
    551 U.S. 89 (2007) ...................................................................................................4

*Estate of Osuna v. Cnty. of Stanislaus,*
    392 F. Supp. 3d 1162 (E.D. Cal. 2019).....................................................................7

*Grandstaff v. City of Borger, Texas,*
    767 F.2d 161 (5th Cir. 1985)...................................................................................10

*Guevara v. Cnty. of Los Angeles,*
    2015 WL 224727 (C.D. Cal. Jan. 15, 2015) .............................................................7

*Ileto v. Glock, Inc.,*
    349 F.3d 1191 (9th Cir. 2003)...................................................................................3

*J.M. v. Cnty. of Stanislaus,*
    2018 WL 587972 (E.D. Cal. Nov. 7, 2018) ..............................................................7

*Johnson v. Shasta Cnty.,*
    83 F. Supp. 3d 918 (E.D. Cal. 2015).......................................................................10

*Leatherman v. Tarrant Cnty.,*
    507 U.S. 163 (1993) .................................................................................................4

*McRorie v. Shimoda,*
    795 F.2d 780 (9th Cir. 1986)...................................................................................10

*Monell v. Dep't of Soc. Servs.,*
    436 U.S. 658 (1978) ....................................................................................1, 10, 11

*N. Star Int'l v. Arizona Corp. Comm'n,*
    720 F.2d 578 (9th Cir. 1983)..................................................................................4

*NeSmith v. Cnty. of San Diego,*
    2016 WL 4729309 (S.D. Cal. Sept. 12, 2016) ..................................................7

*Oviatt v. Pearce,*
    954 F.2d 1470 (9th Cir. 1992)..................................................................9, 10

*Paratt v. Taylor,*
    451 U.S. 527 (1981) .................................................................................4

*Pembaur v. City of Cincinnati,*
    475 U.S. 469 (1986) ................................................................................10

*Shaw v. California Dept. of Alcoholic Beverage Control,*
    788 F.2d 600 (9th Cir. 1986)..................................................................10

*Silvas v. E*Trade Mortg. Corp.,*
    514 F.3d 1001 (9th Cir. 2008)..................................................................4

*Spell v. McDaniel,*
    824 F.3d 1380 (4th Cir. 1987)..................................................................6

*Sprowl v. City of Barstow,*
    2018 WL 8058374 (C.D. Cal. Dec. 10, 2018) ..................................................6

*Swierkiewicz v. Sorema N.A.,*
    534 U.S. 506 (2002) .................................................................................4

*Tsao v. Desert Place, Inc.,*
    698 F.3d 1128 (9th Cir. 2012)..................................................................9

*United States v. Austin,*
    64 F.3d 294 (7th Cir. 1995)..................................................................7

*United States v. Technic. Servs., Inc.,*
    314 F.3d 1031 (9th Cir. 2002)..................................................................6

**<u>Statutes</u>**

42 U.S.C. § 1983.........................................................................................4, 7, 12

## I. INTRODUCTION

This civil rights action arises from the unlawful detention and use of excessive force against James Wright ("Plaintiff") by County of San Bernardino Sheriff's Deputies on June 7, 2022. As a result of the detention and excessive use of force, Plaintiff suffered serious physical and emotional injuries. At the time of the use of deadly and nondeadly force against Plaintiff, Plaintiff did not pose a threat to anyone, including an imminent threat of death or serious bodily injury.

Defendant County of San Bernardino now brings this Motion to Dismiss *Monell* claims from Plaintiff's Second Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons stated in this opposition, Plaintiff respectfully submits that he has fulfilled the pleading requirements of Federal Rule of Civil Procedure 8.

## II. PROCEDURAL HISTORY

Plaintiff initially filed this action on May 28, 2024, alleging violations of the Fourth Amendment for unreasonable search and seizure, excessive force, denial of medical care, and municipal liability under 42 U.S.C. § 1983. On July 29, 2024, Plaintiff filed a First Amended Complaint adding additional facts to his municipal liability claims. On August 12, 2024, Defendant County of San Bernardino filed a Motion to Dismiss Plaintiff's municipal liability (or *Monell*) claims (claims four through six) on the grounds that Plaintiff failed to allege sufficient facts to sustain his *Monell* claims. Plaintiff timely opposed Defendant's Motion.

On October 25, 2024, the Court issued an order granting Defendant's Motion, dismissing Plaintiff's Fourth, Fifth and Sixth claims (*Monell* claims), with leave to amend. Specifically, the Court found that Plaintiff's allegations under his Ratification claim were "too vague and conclusory to state a viable ratification claim" because the First Amended Complaint failed to alleged who the final policy maker was or "how that official knew about the deputies' actions and made some

deliberate choice to approve them." (Doc. No. 20 at 5-6). With regards to Plaintiff's Failure to Train and Unconstitutional Custom or Policy Claims, the Court found that the First Amended Complaint was too vague as to the type of force that was used against Plaintiff and that the thirteen lawsuits cited by Plaintiff that involved excessive force allegations against the County "contain virtually no allegations regarding the underlying facts of those cases, making it impossible for the Court to assess whether they support the existence of the particular policies alleged to have caused Wright's injuries. Nor can the Court determine whether the facts of those cases are similar enough to the facts here to demonstrate the County's deliberate indifference." (Doc. No. 20 at 7, 8). Ultimately, the Court conclude that "[b]ecause further factual allegations may cure the deficiencies the Court has identified, Wright is GRANTED LEAVE TO AMEND the pleading in a manner consistent with this Order and will all Rule 11 obligations." (Doc. No. 9).

On November 7, 2024, Plaintiff filed a Second Amended Complaint, alleging (1) Unreasonable detention and arrest; (2) Excessive force; (2) Denial of medical care; (3) Municipal Liability—Inadequate Training; and (4) Municipal Liability—Unconstitutional Custom or Policy. Consistent with the Court's Order, Plaintiff provided alleged the specific types of force used by the deputy (shot at and struck by lethal and less-lethal rounds, and held prone against the ground with DOE DEPUTIES' knees on his back for a prolonged period of time) when Plaintiff posed no threat to the deputies, including no threat of death or serious bodily injury, and provided the underlying facts for each of the eight cases cited by Plaintiffs in support of his allegation that certain unconstitutional customs or policies and inadequate training exist that were the moving force behind his injuries (*see* SAC, Doc No. 21 ¶¶ 58(a)-(g), 75(a)-(g)). In all eight cases cited by Plaintiff of excessive force against the County of San Bernardino, the deputie(s) were found to have used excessive less-lethal force when the subject did not pose an immediate threat and excessive lethal force when the subject did not pose an immediate threat of death or

serious bodily injury. (*See* SAC, Doc No. 21 ¶¶ 58(a)-(g), 75(a)-(g)). In five of the cited cases, the subject was unarmed, like Plaintiff, when the deputies shot at them. Plaintiff contends that Plaintiff's Second Amended Complaint has alleged sufficient facts that have cured the defects that the Court identified in the First Amended Complaint.

### III.  LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) must be read in conjunction with Federal Rule of Civil Procedure 8, which "marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Rule 8 requires the plaintiff to make only (1) a short and plain statement of the court's jurisdiction, (2) a short and plain statement of the claim showing that the plaintiff is entitled to relief, and (3) a demand for judgment and relief. *Davis v. Passman*, 442 U.S. 228 (1979); *Ileto v. Glock, Inc.*, 349 F.3d 1191, 1200 (9th Cir. 2003). Under federal notice pleading, the complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Id*. at 563. In deciding whether a pleading states a plausible claim for relief, the court considers the complaint's factual allegations, "together with all reasonable inferences" from those allegations. *Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Systems, Inc.*, 637 F.3d 1047, 1054 (9th Cir. 2011); *Capogrosso v. Sup. Ct.*, 588 F.3d 180, 184 (3rd Cir. 2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*, 556 U.S. at 662.

Further, under federal notice pleading, courts are liberal in construing complaints in favor of plaintiffs, and allegations of material fact are taken as true and construed in the light most favorable to the pleader. *See Erickson v. Pardus*, 551

3

U.S. 89, 94 (2007); *Silvas v. E\*Trade Mortg. Corp.*, 514 F.3d 1001, 1003-04 (9th Cir. 2008). In reviewing a dismissal for failure to state a claim under Federal Rule of Civil Procedure Rule 12(b)(6), the court must accept all material allegations in the complaint as true and construe them in the light most favorable to the appellant. *N. Star Int'l v. Arizona Corp. Comm'n,* 720 F.2d 578, 580 (9th Cir. 1983). In *Conley v. Gibson*, 355 U.S. 41 (1957), the United States Supreme Court explained that dismissal for failure to state a claim should only be granted under narrow circumstances, and complaints should not be dismissed unless it appears beyond doubt that the plaintiff cannot prove any facts supporting her claim entitling her to relief. *Conley*, 355 U.S. at 45-46.

Civil rights actions are governed by the pleading requirements of Federal Rules of Civil Procedure 8. *See Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002). There is no heightened pleading requirement for civil rights cases, and the United States Supreme Court has repeatedly rejected attempts by the Courts of Appeals to impose heightened pleading requirements in civil rights cases. *Id.*, *Leatherman v. Tarrant Cnty.*, 507 U.S. 163 (1993). To assert a claim under 42 U.S.C. § 1983, a plaintiff has an obligation to put the defendants and the court on notice of what claims are raised in his or her complaint by properly alleging that she has been deprived a federal statutory or constitutional right by a person acting under color of state or local law. *Paratt v. Taylor*, 451 U.S. 527, 535 (1981).

**IV.** **DISCUSSION**

    A. <u>Plaintiff's Allegations Regarding Prior Excessive Force Lawsuits are Sufficient to Allege Monell Liability</u>

In Plaintiff's Second Amended Complaint, Plaintiff alleges that the deputies involved in the incident shot at him and struck him with lethal and less-lethal rounds, despite Plaintiff being cooperative, unarmed at all times, and not posing an immediate threat to anyone, let alone an immediate threat of death or serious bodily injury. (*See* SAC, Doc. No. 21 ¶¶ 16-19). Under Plaintiff's Fourth and Fifth Claims

for Municipal Liability, Plaintiff alleges that the County of San Bernardino has deficient training policies and unconstitutional customs and policies that are the moving force behind his injuries. Relevant to these two claims, Plaintiff alleges that the County maintains some of the following policies, practices, and customs: (1) failing to properly train sheriff's deputies so that deputies do not escalate their interactions and do not overreact and resort to the use of force or deadly force when the use of force is not necessary; (2) using excessive force, including excessive deadly force; (3) inadequate training regarding the use of deadly force; (4) employing and retaining officer individuals whom the County knew or reasonably should have known had dangerous propensities for abusing their authority and for using excessive force; (5) inadequately supervising, training, controlling, assigning, and discipling sheriff's deputies whom the County knew or should have known had the aforementioned propensities and character traits; (6) maintaining grossly inadequate procedures for reporting, supervising, investigating, reviewing, disciplining, and controlling misconduct by sheriff's deputies, (7) failing to adequately discipline sheriff's deputies for misconduct, including "slaps on the wrist" discipline so slight as to be out of proportion to the magnitude of the misconduct; (8) announcing unjustified shootings to be "within policy," including shootings later determined in court to be unconstitutional; (9) where shootings were later determined in court to be unconstitutional, refusing to discipline, terminate or retrain the deputies involved; (10) encouraging a "blue code of silence," "blue shield," "blue wall" or "code of silence" to not report other officers' errors, misconduct or crimes; and (11) maintaining a policy of inaction and an attitude of indifference towards the soaring number of police shootings by failing to discipline, retrain, investigate, terminate, and recommend officers for criminal prosecution who participate in shootings of unarmed people. (SAC, Doc. No. 21, ¶¶ 56(a), 69(a)-(j)).

   Common in Defendants' arguments to dismiss Plaintiff's Failure to Train claim and Unconstitutional Custom or Policy claim is the contention that the eight

cases cited by Plaintiff as examples of the County's pervasive failure to provide adequate training to its deputies and evidence of unconstitutional custom or policy are not sufficient to support these claims. But the cases by Plaintiff are not "isolated incidents" as Defendant contends, but rather demonstrate a pattern of similar constitutional violations by San Bernardino County Sheriff's Deputies that support Plaintiff's Failure to Train and Unconstitutional Policy claims. Plaintiff does not contend that there have *only* been eight cases with similar constitutional violations against County of San Bernardino Sheriff's Deputies, rather, Plaintiffs allege that the eight cited cases are "only a few examples of the continued conduct by sheriff's deputies working for the County of San Bernardino, which indicate the County of San Bernardino's failure to properly train its sheriff's deputies" (SAC, Doc No. 21 ¶ 58) and "only a few examples of cases where San Bernardino County Sheriff's Department Deputies were not disciplined, reprimanded, retained, suspended, or otherwise penalized in connection with the underlying acts giving rise to [those] lawsuits, which indicates that COUNTY…maintains a practice of allowing such behavior…" (SAC, Doc. No. 21 ¶ 75), with the reasonable inference that other such similar incidents have occurred. *See United States v. Technic. Servs., Inc.*, 314 F.3d 1031, 1045 (9th Cir. 2002) ("The use of the phrase "such as" implies that the ensuing list is not exhaustive, but is only illustrative."); *Sprowl v. City of Barstow*, Case No. EDCV 18-1720 JGB (KKx), 2018 WL 8058374, at *4-5 (C.D. Cal. Dec. 10, 2018) (citing *Caffaso, U.S. ex rel. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1054 (9th Cir. 2011)).

  Moreover, the eight listed cases resulted in jury verdicts against the deputies or settlements in favor of the plaintiff(s), which courts have generally found to be sufficient evidence to support *Monell* liability in a Rule 12(b)(6) motion. *See, e.g., Spell v. McDaniel*, 824 F.3d 1380, 1400 (4th Cir. 1987) (holding that evidence of the city's settlement of an earlier police brutality action was properly admitted to show that the city was sufficiently aware of aggressive conduct by police officers);

*United States v. Austin*, 64 F.3d 294, 400 7th Cir. 1995) (holding that evidence of a past settlement was admissible to show that defendant had notice that conduct was wrongful); *Estate of Osuna v. Cnty. of Stanislaus*, 392 F. Supp. 3d 1162, 1173-74 (E.D. Cal. 2019) (plaintiffs' citation of numerous cases in which defendants were either found liable or agreed to pay a substantial monetary sum to resolve excessive use of force claims against them was sufficient to plausibly allege the existence of an unconstitutional policy or custom); *see also J.M. v. Cnty. of Stanislaus*, 1:18-cv-01034-LJO-SAB, 2018 WL 5879725, at *5-6 (E.D. Cal. Nov. 7, 2018) (finding that the plaintiff's allegations of four prior specific instances involving use of excessive force showed the existence of unconstitutional policy or custom and that "[t]he fact that the alleged incidents do not include findings by a competent court that deputies used unconstitutional levels of force is not dispositive"); *NeSmith v. Cnty. of San Diego*, 15-cv-0629-JLS (JMA), 2016 WL 4729309, at *6 n.3 (S.D. Cal. Sept. 12, 2016) (rejecting argument "that prior judicial adjudicative findings…[of] constitutional violations…would be necessary to establish liability"); *Guevara v. Cnty. of Los Angeles*, No. CV 14–08120 DDP (MANx), 2015 WL 224727, at *4 (C.D. Cal. Jan. 15, 2015) (identification of other cases to show a policy, custom or practice is enough to state a claim).

Plaintiff's eight cited cases of excessive force show the existence of these policies and the inclusion of the underlying facts of each case show that all eight of these cases are similar in circumstance to Plaintiff's incident and thereby support Plaintiff's allegations of the above existing unconstitutional customs and policies that are the moving force behind Plaintiff's injuries. Here, Plaintiff was shot and struck with lethal and less-lethal rounds while unarmed and complying with commands. All eight of the cited cases involved deputies shooting subjects who did not pose an immediate threat of death or serious bodily injury at the time of the shooting. Five of the cited cases involved deputies shooting at unarmed subjects.

Two cases involved deputies shooting at subjects who were complying with commands.

The case of *M.A., et al. v. County of San Bernardino, et al.*, further supports Plaintiff's allegations that the County maintains grossly inadequate procedures for reporting, investigating and reviewing misconduct by sheriff's deputies and maintains a policy of inaction and an attitude of indifference as investigators for the County failed to adequately investigate the deputies involved in the shooting, choosing to take the deputies' word over the forensic evidence and percipient witnesses' statements.

The case of *Archibald v. County of San Bernardino,* further supports Plaintiff's allegations that the County failed to adequately train its deputes to not improperly escalate their interactions with subjects, failed to adequately train its deputies on the use of force and deadly force, failed to adequately supervise, train, and discipline sheriff's deputies whom the County knew or should have know to have violent propensities or character traits, announced unjustified shootings to be "within policy" that were later found to be constitutional in a court of law and subsequently failing to discipline, terminate or retrain the deputies involved. The deputy in the *Archibald* case not only unnecessarily escalated a consensual encounter, but was determined by a jury to have used excessive and unreasonable force against the decedent. After the incident, the deputy was neither disciplined nor retrained and went on to shoot another unarmed man.

Accordingly, the cases listed by Plaintiff in his Failure to Train and Unconstitutional Policy, Practice, or Custom claims are sufficient to support those claims.

B. <u>Plaintiff Has Sufficiently Pled His Fourth Claim for Municipal Liability – Inadequate Training</u>

"[A] local governmental body may be liable if it has a policy of inaction and such inaction amounts to a failure to protect constitutional rights." *Oviatt v. Pearce*,

954 F.2d 1470, 1474 (9th Cir. 1992) (citing *City of Canton v. Harris*, 489 U.S. 378, 388 (1989). "A policy of inaction or omission may be based on failure to implement procedural safeguards to prevent constitutional violations." *Tsao v. Desert Place, Inc.*, 698 F.3d 1128, 1143 (9th Cir. 2012). A local government's failure to train its employees "may serve as the basis for § 1983 liability…where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." *City of Canton*, 489 U.S. at 388. Here, Plaintiff contends that this policy of inaction includes a failure to adequately train sheriff's deputies working for the County of San Bernardino. A plaintiff alleging a failure to train claim must show: (1) he was deprived of a constitutional right; (2) the municipality had a training policy that "amounts to deliberate indifference to the [constitutional] rights of the persons with whom [its police officers] are likely to come into contact"; and (3) his or her constitutional injury would have been avoided had the municipality properly trained those officers. *Blankenhorn v. City of Orange*, 485 F.3d 463, 484 (9th Cir. 2007).

Here, Plaintiff has specifically alleged the failure to adequately train County of San Bernardino sheriff's deputies to avoid unlawful detentions and arrests and uses of excessive force. *See* SAC, Doc. No. 21 ¶ 53. Plaintiff has further alleged that the County of San Bernardino failed to train its sheriff's deputies regarding de-escalation, overreactions, proper police tactics such as situational awareness, and effective communication prior to and during the uses of force, all of which resulted serious injuries to Plaintiff. *See* SAC, Doc. No. 21 ¶¶ 56(a)-(e), 66. Moreover, by citing to eight prior cases of alleged excessive force and deadly force and stating that these cases are "only a few examples of continued misconduct" by County of San Bernardino sheriff's deputies, Plaintiff has sufficiently pled that the County and its policymakers failed to implement adequate training despite being on actual or constructive notice that its training program was inadequate. Accordingly, Plaintiff has sufficiently pled specific facts to sustain a claim for municipal liability pursuant

to the County of San Bernardino's failure to train. *See Johnson v. Shasta Cnty.*, 83 F. Supp. 3d 918, 931-32 (E.D. Cal. 2015).

### C. Plaintiff Has Sufficiently Pled His Sixth Claim for Municipal Liability – Unconstitutional Custom or Policy

Plaintiff may establish liability under *Monell* by showing a constitutional violation caused by a policy, custom, or practice of the public entity. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978). A policy is a formally adopted rule, statute or guideline adopted by a public entity. *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480 (1986). A custom or practice are more informal in nature, and *Monell* liability may be imposed for a constitutional violation of resulting from persistent yet informal conduct of public employees. *Shaw v. California Dept. of Alcoholic Beverage Control*, 788 F.2d 600 (9th Cir. 1986) (pattern of police misconduct for repeated discriminatory law enforcement acts against black bar owners). *Monell* liability may also be based on a policy of inaction that amounts to a failure to protect constitutional rights. *City of Canton*, at, 388; *Oviatt v. Pearce*, 954 F.2d 1470, 1474 (9th Cir. 1992).

A policy may be inferred from the conduct of a municipality after an incident when no steps are taken to reprimand or otherwise take action in response to egregious conduct. *McRorie v. Shimoda*, 795 F.2d 780, 784 (9th Cir. 1986) (citing *Grandstaff v. City of Borger, Texas*, 767 F.2d 161, 171 (5th Cir. 1985)). The "subsequent acceptance of dangerous recklessness by the policymaker tends to prove his preexisting disposition and policy," and where there is no indication that the municipality took any action, besides attempting to avoid liability in response to dangerous conduct, it is reasonable to infer that such conduct is in accordance with a policy. *Grandstaff*, 767 F.2d at 171. The complaint need only allege "the policy or custom itself ... in general terms" as "[i]t is a rare plaintiff who will have access to the precise contours of a policy or custom prior to having engaged in discovery, and requiring a plaintiff to plead its existence in detail is likely to be no more than an

exercise in educated guesswork." *Estate of Osuna*, 392 F. Supp. 3d at 1174, 1175 (citations omitted).

Here, Plaintiff has alleged sufficiently specific facts to support a claim of unconstitutional custom or policy, including but not limited to the County employing and retaining officers that the County knew had dangerous propensities for using excessive force, inadequately supervising, training and discipling its sheriff's deputies for their use of excessive force, maintaining grossly inadequate procedures for reporting, supervising, reviewing, and disciplining misconduct by its sheriff's deputies, finding unjustified shootings to be "within policy," including shootings that were later determined in court to be unconstitutional, maintaining a practice of inaction and indifference to the rising number of police shootings and use of excessive force, and failing to objectively investigate complaints of excessive uses of force. *See* SAC, Doc. No. 21 ¶¶ 69 (a)-(j), 79. Plaintiffs further allege that these policies and customs led sheriff's deputies to believe that excessive uses of force to be permissible and would be permitted by the County and thus, were "the driving force that caused the DOE DEPUTIES to use excessive force against Plaintiff." SAC ¶ 71. Moreover, the eight cases cited by Plaintiff in which officers engaged in similar uses of excessive force against nonthreatening suspects provide further support of the County's acceptance of such conduct as discussed above. *See supra*, Section IV.A. Accordingly, these allegations are sufficient to support a *Monell* claim for unconstitutional custom or policy.

## V.   IF THE COURT FINDS BASIS TO GRANT TO DEFENDANT'S MOTION TO DISMISS, LEAVE TO AMEND SHOULD BE GRANTED

Plaintiff contends that Plaintiff has addressed the deficiencies identified in the Court's October 25, 2024 Order. However, should the Court find the allegations to be insufficient, Plaintiff requests leave to amend his Complaint to address any deficiencies that the Court may find.

## VI. CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court deny County of San Bernardino's Motion to Dismiss Plaintiff's Second Amended Complaint in its entirety. Should the Court find the current allegations to be lacking, Plaintiff respectfully requests leave to amend the complaint.

DATED:  December 6, 2024         LAW OFFICES OF DALE K. GALIPO


By    */s/ Hang D. Le*
Dale K. Galipo
Hang D. Le
Attorneys for Plaintiff

12
PLAINTIFF'S OPPOSITION TO DEFENDANT COUNTY'S MOTION TO DISMISS SECOND AMENDED COMPLAINT