1  LAW OFFICES OF DALE K. GALIPO
   Dale K. Galipo, Esq. (SBN 144074)
2  dalekgalipo@yahoo.com
   Hang D. Le, Esq. (SBN 293450)
3  hlee@galipolaw.com
   21800 Burbank Boulevard, Suite 310
4  Woodland Hills, CA 91367
   Telephone:   (818) 347-3333
5  Facsimile:   (818) 347-4118

6

7

8                **UNITED STATES DISTRICT COURT**

9                **CENTRAL DISTRICT OF CALIFORNIA**

10

11 JAMES WRIGHT,                          Case No. 5:24-cv-01123-JLS-JC

12            Plaintiff,                   **THIRD AMENDED COMPLAINT FOR DAMAGES**

13        vs.
                                           1. Unreasonable Search and
14                                            Seizure—Detention and Arrest (42
   COUNTY OF SAN BERNARDINO;                  U.S.C. § 1983)
15 TRAVIS ESQUIVEL; ALEJANDRO             2. Unreasonable Search and
   QUEZADA; SERGIO RAMIREZ;                  Seizure—Excessive Force (42
16 AMINIDAB QUEZADA; FRANCISCO              U.S.C. § 1983)
   DEMARA; DESHAUN JONES;                 3. Unreasonable Search and
17 CAMERON STANLEY; GARRETT                 Seizure—Denial of Medical Care
   VAIRIN; and DOES 9-10, inclusive,        (42 U.S.C. § 1983)
18                                         4. Municipal Liability – Inadequate
             Defendants.                     Training (42 U.S.C. § 1983)
19                                         5. Municipal Liability –
20                                           Unconstitutional Custom or Policy
                                             (42 U.S.C. § 1983)
21

22                                         **DEMAND FOR JURY TRIAL**

23

24

25

26

27

28

## COMPLAINT FOR DAMAGES

JAMES WRIGHT brings this Complaint against Defendants COUNTY OF SAN BERNARDINO, TRAVIS ESQUIVEL, ALEJANDRO QUEZADA, SERGIO RAMIREZ, AMINIDAB QUEZADA, FRANCISCO DEMARA, DESHAUN JONES, CAMERON STANLEY, GARRETT VAIRIN, and DOES 9-10, inclusive, and hereby alleges as follows:

## INTRODUCTION

1.      This civil rights and state tort action seeks compensatory and punitive damages for serious physical injuries sustained by Plaintiff JAMES WRIGHT ("WRIGHT" or "Plaintiff") as a result of force used against him by County of San Bernardino Sheriff's Deputies on June 7, 2022.  The use of force was excessive and unreasonable because WRIGHT posed no immediate threat to any person and was unarmed at the time the use of force.  As a result of the officers' use of force, WRIGHT endured pain and suffering and sustained serious physical injuries. WRIGHT also experienced and continues to experience emotional distress from the incident and the physical injuries he sustained. Also, as a result of the use of force, WRIGHT has incurred medical expenses, has lost earnings, has suffered a reduced earning capacity, and expects to incur future medical expenses and lose future earnings.

## JURISDICTION AND VENUE

2.      This case arises under 42 U.S.C. § 1983 and 1988 as well as California law.  This court has subject matter jurisdiction over Plaintiff's federal question and civil rights claims pursuant to 28 U.S.C. §§ 1331 and 1343.  This Court has jurisdiction over Plaintiff's supplemental state law claims under 28 U.S.C. § 1367 as those claims arise out of the same transactions and occurrences as Plaintiff's federal question claims.

3.     Venue is proper in the Central District of California pursuant to 28 U.S.C. § 1391(b)(2) because all incidents, events, and occurrences giving rise to this action occurred in the City and the County of San Bernardino, California.

## **PARTIES**

4.     At all relevant times, Plaintiff JAMES WRIGHT was and is an individual residing in the City of Encino, California.

5.     At all relevant times, Defendant COUNTY OF SAN BERNARDINO ("COUNTY") is and was a municipal corporation existing under the laws of the State of California. COUNTY is a chartered subdivision of the State of California with the capacity to be sued. COUNTY is responsible for the actions, omissions, policies, procedures, practices, and customs of its various agents and agencies, including the San Bernardino County Sheriff's Department ("SBSD") and its agents and employees.  At all relevant times, Defendant COUNTY was responsible for assuring that the actions, omissions, policies, procedures, practices, and customs of the and its employees and agents complied with the laws of the United States and of the State of California.  At all relevant times, COUNTY was the employer of Defendants TRAVIS ESQUIVEL, ALEJANDRO QUEZADA, SERGIO RAMIREZ, AMINIDAB QUEZADA, FRANCISCO DEMARA, DESHAUN JONES, CAMERON STANLEY, and GARRETT VAIRIN.

6.     At all relevant times, Defendant TRAVIS ESQUIVEL ("ESQUIVEL") was as a law enforcement officer for SBSD and Defendant COUNTY. At all relevant times, ESQUIVEL was acting under color of law and within the course and scope of his employment with COUNTY as a member of SBSD. At all relevant times, ESQUIVEL was acting with the complete authority and ratification of his principal, Defendant COUNTY.

7.     At all relevant times, Defendant TRAVIS ESQUIVEL ("ESQUIVEL") was as a law enforcement officer for SBSD and Defendant COUNTY. At all

relevant times, ESQUIVEL was acting under color of law and within the course and scope of his employment with COUNTY as a member of SBSD. At all relevant times, ESQUIVEL was acting with the complete authority and ratification of his principal, Defendant COUNTY.

8.      At all relevant times, Defendant ALEJANDRO QUEZADA ("AL. QUEZADA") was as a law enforcement officer for SBSD and Defendant COUNTY. At all relevant times, AL. QUEZADA was acting under color of law and within the course and scope of his employment with COUNTY as a member of SBSD. At all relevant times, AL. QUEZEDA was acting with the complete authority and ratification of his principal, Defendant COUNTY.

9.      At all relevant times, Defendant SERGIO RAMIREZ ("RAMIREZ") was as a law enforcement officer for SBSD and Defendant COUNTY. At all relevant times, RAMIREZ was acting under color of law and within the course and scope of his employment with COUNTY as a member of SBSD. At all relevant times, RAMIREZ was acting with the complete authority and ratification of his principal, Defendant COUNTY.

10.     At all relevant times, Defendant AMINIDAB QUEZADA ("AM. QUEZADA") was as a law enforcement officer for SBSD and Defendant COUNTY. At all relevant times, AM. QUEZADA was acting under color of law and within the course and scope of his employment with COUNTY as a member of SBSD. At all relevant times, AM. QUEZADA was acting with the complete authority and ratification of his principal, Defendant COUNTY.

11.     At all relevant times, Defendant FRANCISCO DEMARA ("DEMARA") was as a law enforcement officer for SBSD and Defendant COUNTY. At all relevant times, DEMARA was acting under color of law and within the course and scope of his employment with COUNTY as a member of SBSD. At all relevant times, DEMARA was acting with the complete authority and ratification of his principal, Defendant COUNTY.

12.     At all relevant times, Defendant DESHAUN JONES ("JONES") was as a law enforcement officer for SBSD and Defendant COUNTY. At all relevant times, JONES was acting under color of law and within the course and scope of his employment with COUNTY as a member of SBSD. At all relevant times, JONES was acting with the complete authority and ratification of his principal, Defendant COUNTY.

13.     At all relevant times, Defendant CAMERON STANLEY ("STANLEY") was as a law enforcement officer for SBSD and Defendant COUNTY. At all relevant times, STANLEY was acting under color of law and within the course and scope of his employment with COUNTY as a member of SBSD. At all relevant times, STANLEY was acting with the complete authority and ratification of his principal, Defendant COUNTY.

14.     At all relevant times, Defendant GARRETT VAIRIN ("VAIRIN") was as a law enforcement officer for SBSD and Defendant COUNTY. At all relevant times, VAIRINI was acting under color of law and within the course and scope of his employment with COUNTY as a member of SBSD. At all relevant times, VAIRIN was acting with the complete authority and ratification of his principal, Defendant COUNTY.

15.     Defendants DOES 9-10 are managerial, supervisorial, and policymaking employees of SBSD, who at all relevant times was acting under color of law within the course and scope of their duties as managerial, supervisorial, and policymaking employees for SBSD. DOES 9-10 was acting with the complete authority and ratification of their principal, Defendant COUNTY.

16.     On information and belief, at all relevant times DOES 9-10 were residents of the County of San Bernardino.

17.     In doing the acts and failing and omitting to act as hereinafter described, Defendants ESQUIVEL, AL. QUEZADA, RAMIREZ, AM. QUEZADA,

DEMARA, JONES, STANLEY, and VAIRIN were acting on the implied and actual permission and consent of DOES 9-10 and the COUNTY.

18.     In doing the acts and failing and omitting to act as hereinafter described, Defendants DOES 9-10 was acting on the implied and actual permission and consent of the COUNTY.

19.     The true names and capacities, whether individual, corporate, association, or otherwise of Defendants DOES 9-10, inclusive, are unknown to Plaintiff, who otherwise sues these Defendants by such fictitious names.  Plaintiff will seek leave to amend this complaint to show the true names and capacity of these Defendants when they have been ascertained.  Each of the fictitiously-named Defendants is responsible in some manner for the conduct or liabilities alleged herein.

20.     At all times mentioned herein, each and every Defendant was the agent of each and every other Defendant and had the legal duty to oversee and supervise the hiring, conduct, and employment of each and every Defendant.

21.     All of the acts complained of herein by Plaintiff against Defendants were done and performed by said Defendants by and through their authorized agents, servants, and/or employees, all of whom at all relevant times herein were acting within the course, purpose, and scope of said agency, service, and/or employment capacity.  Moreover, Defendants and their agents ratified all of the acts complained of herein.

22.     All Defendants who are natural persons, including DOES 9-10, are sued individually and in their official capacities as officers, sergeants, captains, commanders, supervisors, and/or civilian employees, agents, policy makers, and representatives for their respective principal, COUNTY.

23.     Plaintiff suffered injuries as a direct and proximate result of the actions ESQUIVEL, AL. QUEZADA, RAMIREZ, AM. QUEZADA, DEMARA, JONES, STANLEY, and VAIRIN.

1

## **FACTS COMMON TO ALL CLAIMS FOR RELIEF**

2      24.      Plaintiff repeats and realleges each and every allegation in paragraphs 1

3  through 23 of this Complaint with the same force and effect as if fully set forth

4  herein.

5      25.      On June 7, 2022, Plaintiff WRIGHT was driving his vehicle when

6  ESQUIVEL, AL. QUEZADA, RAMIREZ, AM. QUEZADA, DEMARA, JONES,

7  STANLEY, and VAIRIN initiated a traffic stop on Plaintiff WRIGHT and his

8  vehicle. Plaintiff WRIGHT pulled over near the intersection of Bear Valley Road

9  and Hesperia Road in Victorville, California. On information and belief, Plaintiff

10  WRIGHT had not committed any traffic infraction or any crime at the time

11  ESQUIVEL, AL. QUEZADA, RAMIREZ, AM. QUEZADA, DEMARA, JONES,

12  STANLEY, and VAIRIN initiated the traffic stop. On information and belief,

13  ESQUIVEL, AL. QUEZADA, RAMIREZ, AM. QUEZADA, DEMARA, JONES,

14  STANLEY, and VAIRIN had no reasonable suspicion to detain or probable cause to

15  arrest Plaintiff WRIGHT.

16      26.      Once Plaintiff WRIGHT pulled over, ESQUIVEL, AL. QUEZADA,

17  RAMIREZ, AM. QUEZADA, DEMARA, JONES, STANLEY, and VAIRIN issued

18  several commands to WRIGHT. Plaintiff WRIGHT had his hands on the steering

19  wheel pursuant to commands and was following ESQUIVEL, AL. QUEZADA,

20  RAMIREZ, AM. QUEZADA, DEMARA, JONES, STANLEY, and VAIRIN'S

21  commands when he was shot at and struck by lethal and less-lethal rounds.

22      27.      At all relevant times, Plaintiff WRIGHT did not pose an immediate

23  threat to the safety of ESQUIVEL, AL. QUEZADA, RAMIREZ, AM. QUEZADA,

24  DEMARA, JONES, STANLEY, and VAIRIN or others. Plaintiff WRIGHT was

25  unarmed and following ESQUIVEL, AL. QUEZADA, RAMIREZ, AM.

26  QUEZADA, DEMARA, JONES, STANLEY, and VAIRIN'S commands when he

27  was shot at and struck by lethal and less-lethal rounds.

28

28.     After Plaintiff WRIGHT was shot at and struck by lethal and less-lethal rounds, ESQUIVEL, AL. QUEZADA, RAMIREZ, AM. QUEZADA, DEMARA, JONES, STANLEY, and VAIRIN handcuffed WRIGHT and held him prone against the ground, with ESQUIVEL, AL. QUEZADA, RAMIREZ, AM. QUEZADA, DEMARA, JONES, STANLEY, and VAIRIN knees on WRIGHT's back for a prolonged period of time.

29.     After Plaintiff WRIGHT was seriously injured by being shot at and struck by lethal and less-lethal rounds, Plaintiff WRIGHT was denied prompt medical attention.  The delay of medical care to Plaintiff WRIGHT caused him extreme physical and emotional pain and suffering and contributed to his damages.

30.     As a result of the use of excessive force, Plaintiff WRIGHT sustained serious physical injuries and has incurred financial loss and expenses in the form of past and future loss of earnings, decreased earning capacity, and past and future medical expenses. Also as a result of this incident, Plaintiff WRIGHT has endured pain and suffering and emotional and mental distress stemming from the physical injuries.

## FIRST CLAIM FOR RELIEF

### Unreasonable Search and Seizure—Detention and Arrest (42 U.S.C. § 1983)

(Against Defendants ESQUIVEL, AL. QUEZADA, RAMIREZ, AM. QUEZADA, DEMARA, JONES, STANLEY, and VAIRIN)

31.     Plaintiff repeats and re-alleges each and every allegation in paragraphs 1 through 30 of this Complaint with the same force and effect as if fully set forth herein.

32.     Defendants ESQUIVEL, AL. QUEZADA, RAMIREZ, AM. QUEZADA, DEMARA, JONES, STANLEY, and VAIRIN had no objectively reasonable or specifically articulable factual basis to suspect that Plaintiff was involved in the commission of any crime, nor did Defendants ESQUIVEL, AL.

QUEZADA, RAMIREZ, AM. QUEZADA, DEMARA, JONES, STANLEY, and VAIRIN have any confirmation that Plaintiff had committed any crime, posed any threat to anyone, and did not see Plaintiff in possession of any illegal objects, contraband, or weapons.

33.     Defendants ESQUIVEL, AL. QUEZADA, RAMIREZ, AM. QUEZADA, DEMARA, JONES, STANLEY, and VAIRIN detained Plaintiff without reasonable suspicion and arrested him without probable cause by pulling Plaintiff over, striking Plaintiff's body with lethal and less-lethal rounds, shooting at Plaintiff, and holding Plaintiff prone on the ground while exerting weight and force on Plaintiff's back for a prolonged period of time. The scope and manner of Defendants ESQUIVEL, AL. QUEZADA, RAMIREZ, AM. QUEZADA, DEMARA, JONES, STANLEY, and VAIRIN'S detention and arrest of Plaintiff was unreasonable.

34.     The conduct of Defendants ESQUIVEL, AL. QUEZADA, RAMIREZ, AM. QUEZADA, DEMARA, JONES, STANLEY, and VAIRIN violated Plaintiff's right to be secure in his person against unreasonable searches and seizures as guaranteed to Plaintiff under the Fourth Amendment to the United States Constitution and applied to state actors by the Fourteenth Amendment.

35.     The conduct of Defendants ESQUIVEL, AL. QUEZADA, RAMIREZ, AM. QUEZADA, DEMARA, JONES, STANLEY, and VAIRIN was willful, wanton, malicious, and done with reckless disregard for the rights and safety of Plaintiff and therefore warrants the imposition of exemplary and punitive damages as to Defendants ESQUIVEL, AL. QUEZADA, RAMIREZ, AM. QUEZADA, DEMARA, JONES, STANLEY, and VAIRIN.

36.     As a result of their misconduct, Defendants ESQUIVEL, AL. QUEZADA, RAMIREZ, AM. QUEZADA, DEMARA, JONES, STANLEY, and VAIRIN are liable for Plaintiff's injuries, either because they were integral

1 participants in the unreasonable seizure or because they failed to prevent these
2 violations.

3      37.    Plaintiff seeks compensatory damages and attorney's fees under this
4 claim.

5

6                          **SECOND CLAIM FOR RELIEF**

7    **Unreasonable Search and Seizure—Excessive Force (42 U.S.C. § 1983)**

8    (Against Defendants ESQUIVEL, AL. QUEZADA, RAMIREZ, AM. QUEZADA,
9                   DEMARA, JONES, STANLEY, and VAIRIN)

10     38.    Plaintiff repeats and realleges each and every allegation in paragraphs 1
11 through 37 of this Complaint with the same force and effect as if fully set forth
12 herein.

13     39.    ESQUIVEL, AL. QUEZADA, RAMIREZ, AM. QUEZADA,
14 DEMARA, JONES, STANLEY, and VAIRIN used excessive and unreasonable
15 force when they struck Plaintiff with lethal and less-lethal rounds, shot at Plaintiff,
16 and held Plaintiff prone against the ground while applying force and weight to
17 Plaintiff's back. Defendant ESQUIVEL, AL. QUEZADA, RAMIREZ, AM.
18 QUEZADA, DEMARA, JONES, STANLEY, and VAIRIN'S unjustified use of
19 force deprived Plaintiff of his right to be secure in his person against unreasonable
20 searches and seizures as guaranteed to Plaintiff under the Fourth Amendment to the
21 United States Constitution and applied to state actors by the Fourteenth Amendment.

22     40.    At all relevant times, Plaintiff did not forcibly resist nor did he pose an
23 immediate threat to the safety of ESQUIVEL, AL. QUEZADA, RAMIREZ, AM.
24 QUEZADA, DEMARA, JONES, STANLEY, and VAIRIN or anyone else.

25     41.    Defendants ESQUIVEL, AL. QUEZADA, RAMIREZ, AM.
26 QUEZADA, DEMARA, JONES, STANLEY, and VAIRIN'S use of force was
27 excessive and objectively unreasonable and contrary to basic police officer training
28 because Plaintiff posed no immediate threat to the safety of any person at the time.

42.     Defendants ESQUIVEL, AL. QUEZADA, RAMIREZ, AM. QUEZADA, DEMARA, JONES, STANLEY, and VAIRIN did not exhaust all reasonable available alternative measures prior using force on Plaintiff. Defendants ESQUIVEL, AL. QUEZADA, RAMIREZ, AM. QUEZADA, DEMARA, JONES, STANLEY, and VAIRIN failed provide adequate commands and warnings prior to using force, despite it be feasible to do so.

43.     Plaintiff suffered serious and permanent physical injuries as a result of the use of force.

44.     At all relevant times, Defendants ESQUIVEL, AL. QUEZADA, RAMIREZ, AM. QUEZADA, DEMARA, JONES, STANLEY, and VAIRIN were acting under color of state law.

45.     As a result of their misconduct as described above, Defendants ESQUIVEL, AL. QUEZADA, RAMIREZ, AM. QUEZADA, DEMARA, JONES, STANLEY, and VAIRIN are liable for Plaintiff's injuries, either because they were integral participants in the use of excessive force or because they failed to prevent these violations.

46.     The conduct of Defendants ESQUIVEL, AL. QUEZADA, RAMIREZ, AM. QUEZADA, DEMARA, JONES, STANLEY, and VAIRIN was willful, wanton, malicious, and done with reckless disregard for the rights and safety of Plaintiff and therefore warrants the imposition of exemplary and punitive damages as to Defendants ESQUIVEL, AL. QUEZADA, RAMIREZ, AM. QUEZADA, DEMARA, JONES, STANLEY, and VAIRIN.

47.     Plaintiff seeks compensatory damages for the violations of his rights, including damages for past and future medical expenses, past and future loss of earnings and decreased earning capacity, physical injuries, past and future pain and suffering, emotional and mental distress stemming from the physical injuries, humiliation, and disfigurement.  Plaintiff also seeks punitive damages, costs, and attorney's fees under this claim.

1   //
2   //
3   //
4   //
5   //
6   //
7   **THIRD CLAIM FOR RELIEF**

8   **Unreasonable Search and Seizure—Denial of Medical Care (42 U.S.C. § 1983)**

9   (Against Defendants ESQUIVEL, AL. QUEZADA, RAMIREZ, AM. QUEZADA,

10   DEMARA, JONES, STANLEY, and VAIRIN)

11   48.    Plaintiff repeats and realleges each and every allegation in paragraphs 1

12   through 47 of this Complaint with the same force and effect as if fully set forth

13   herein.

14   49.    After the detention, arrest, and use of force, Plaintiff was denied

15   prompt medical attention while he was seriously injured and in pain. The delay of

16   medical care to Plaintiff caused him extreme physical and emotional pain and

17   suffering and contributed to his damages.

18   50.    The denial of medical care by Defendants ESQUIVEL, AL.

19   QUEZADA, RAMIREZ, AM. QUEZADA, DEMARA, JONES, STANLEY, and

20   VAIRIN deprived Plaintiff of his right to be secure in his person against

21   unreasonable searches and seizures as guaranteed to him under the Fourth

22   Amendment to the United States Constitution and applied to state actors by the

23   Fourteenth Amendment.

24   51.    The delay in medical attention contributed to Plaintiff's pain and

25   suffering and was a contributing cause of Plaintiff's injuries and his mental and

26   emotional distress.

27   52.    Defendant ESQUIVEL, AL. QUEZADA, RAMIREZ, AM.

28   QUEZADA, DEMARA, JONES, STANLEY, and VAIRIN knew that failure to

provide timely medical treatment to Plaintiff could result in further significant injury or the unnecessary and wanton infliction of pain, but disregarded that serious medical need, causing Plaintiff great bodily harm.

53.     The conduct of Defendants ESQUIVEL, AL. QUEZADA, RAMIREZ, AM. QUEZADA, DEMARA, JONES, STANLEY, and VAIRIN was willful, wanton, malicious, and done with reckless disregard for the rights and safety of Plaintiff and therefore warrants the imposition of exemplary and punitive damages as to ESQUIVEL, AL. QUEZADA, RAMIREZ, AM. QUEZADA, DEMARA, JONES, STANLEY, and VAIRIN.

54.     At all relevant times, Defendants ESQUIVEL, AL. QUEZADA, RAMIREZ, AM. QUEZADA, DEMARA, JONES, STANLEY, and VAIRIN were acting under color of state law.

55.     As a result of their misconduct as described above, Defendants ESQUIVEL, AL. QUEZADA, RAMIREZ, AM. QUEZADA, DEMARA, JONES, STANLEY, and VAIRIN are liable for Plaintiff's injuries, either because they were integral participants or because they failed to prevent these violations.

56.     Plaintiff seeks compensatory damages for the violations of his rights, including damages for past and future medical expenses, past and future loss of earnings and decreased earning capacity, physical injuries, past and future pain and suffering, emotional and mental distress stemming from the physical injuries, humiliation, and disfigurement.  Plaintiff also seeks punitive damages, costs, and attorney's fees under this claim.

### **FOURTH CLAIM FOR RELIEF**

### **Municipal Liability – Inadequate Training (42 U.S.C. § 1983)**

(Against Defendants COUNTY and DOES 9-10)

57.     Plaintiff repeats and realleges each and every allegation in paragraphs 1 through 56 of this Complaint with the same force and effect as if fully set forth herein.

58.     At all relevant times, Defendants ESQUIVEL, AL. QUEZADA, RAMIREZ, AM. QUEZADA, DEMARA, JONES, STANLEY, and VAIRIN were acting under color of state law.

59.     The acts of Defendants ESQUIVEL, AL. QUEZADA, RAMIREZ, AM. QUEZADA, DEMARA, JONES, STANLEY, and VAIRIN deprived Plaintiff of his rights under the United States Constitution.

60.     The training policies of Defendant COUNTY were not adequate to train its officers to handle the usual and recurring situations with which they must deal.

61.     Defendant COUNTY was deliberately indifferent to the obvious consequences of its failure to train its police officers adequately.  Specifically, COUNTY failed to adequately train ESQUIVEL, AL. QUEZADA, RAMIREZ, AM. QUEZADA, DEMARA, JONES, STANLEY, and VAIRIN with respect to detentions and arrests, tactics, use of less-lethal options, and the use of deadly force, including determining whether the use of force and deadly force is reasonable and appropriate under the circumstances.

62.     The negligent and unjustified use of force by ESQUIVEL, AL. QUEZADA, RAMIREZ, AM. QUEZADA, DEMARA, JONES, STANLEY, and VAIRIN was a result of the negligent training by the Defendants COUNTY and DOES 6-10, who failed to train COUNTY deputies as to proper police tactics, proper use of force, proper use of deadly force, and proper detention and arrest procedures. The Defendant COUNTY and DOES 9-10 were responsible for the training of COUNTY deputies to ensure that the actions, procedures, and practices of said Defendants complied with Peace Officer Standards and Training (POST) training standards regarding proper police tactics, and proper use of deadly force.

63.     The Defendants COUNTY and DOES 9-10 negligently failed to train COUNTY deputies to comply with POST training standards regarding proper police tactics, proper use of force, proper use of deadly force, and proper detention and arrest procedures. POST was established by the California Legislature in 1959 to set minimum training standards for California police officers. The training policies of COUNTY were not adequate to train its police officers to handle the usual and recurring situations with residents that said Defendants have contact with.

64.     The training policies of the COUNTY were deficient in the following ways:

       (a)    COUNTY failed to properly train COUNTY sheriff's deputies so that deputies do not escalate their interactions with residents and do not overreact and resort to use of force or deadly force when the use of force was not necessary.

       (b)    COUNTY failed to properly train COUNTY sheriff's deputies so that Defendants do not permit fear to reach the point of becoming unreasonable fear, and not objectively reasonable, which would result in the use of force to cause that would cause serious injuries to residents, such as Plaintiff. This was a part of COUNTY negligent failure to train DOE DEPUTIES to properly and adequately assess the need to use force against Plaintiff.

       (c)    COUNTY failed to properly train COUNTY failed to properly train COUNTY sheriff's deputies, such as ESQUIVEL, AL. QUEZADA, RAMIREZ, AM. QUEZADA, DEMARA, JONES, STANLEY, and VAIRIN, in proper police tactics, such as situational awareness so that sheriff's deputies do not utilize negligent tactics, such as ESQUIVEL, AL. QUEZADA, RAMIREZ, AM. QUEZADA, DEMARA, JONES, STANLEY, and VAIRIN herein. Because of this lack of proper training by

COUNTY, ESQUIVEL, AL. QUEZADA, RAMIREZ, AM. QUEZADA, DEMARA, JONES, STANLEY, and VAIRIN did not use proper police tactics in handling of the contact with Plaintiff, and instead used defective police tactics, including the lack of a situational awareness. These defective tactics resulted in serious injuries to Plaintiff.

(d) COUNTY failed to properly train COUNTY sheriff's deputies, such as ESQUIVEL, AL. QUEZADA, RAMIREZ, AM. QUEZADA, DEMARA, JONES, STANLEY, and VAIRIN, in the importance of effective communication prior to using force.

(e) Because of the lack of proper training by COUNTY, ESQUIVEL, AL. QUEZADA, RAMIREZ, AM. QUEZADA, DEMARA, JONES, STANLEY, and VAIRIN did not use effective communication prior to and during the use of force against Plaintiff. The ineffective communication of information by ESQUIVEL, AL. QUEZADA, RAMIREZ, AM. QUEZADA, DEMARA, JONES, STANLEY, and VAIRIN prior to, and during the incident, resulted in serious injuries to Plaintiff.

65. The failure of Defendant COUNTY to provide adequate training caused the deprivation of Plaintiff's rights; that is, Defendant COUNTY's failure to train is so closely related to the deprivation of Plaintiff's rights as to be the moving force that caused the ultimate injury.

66. The following are only a few examples of continued conduct by sheriff's deputies working for the County of San Bernardino, which indicate the County of San Bernardino's failure to properly train its sheriff's deputies:

(a) In *V.R. v. County of San Bernardino, et al.*, case number 5:19-cv-01023-JGB-SP, Plaintiffs argued that the use of less-lethal and lethal munitions against decedent, Juan Ramos, was

unreasonable and excessive. Prior to the uses of force, officers had responded to a call for reckless driving and had engaged in a vehicle pursuit with Mr. Ramos. The pursuit ultimately ended in a dead-end street where officers attempted to extract Mr. Ramos out of his vehicle. The officers had information that Mr. Ramos was in possession of an edged weapon. The officers broke the vehicle's front passenger window. When Mr. Ramos momentarily exited the vehicle, the officers deployed three beanbag rounds at him and Mr. Ramos reentered his vehicle. A few seconds later, Mr. Ramos exited his vehicle and ran away from the vehicle and officers with the edged weapon in his hand. As he was running in the direction of some civilians in a nearby front yard, an officer shot at Mr. Ramos in the back. Prior to the shooting, Mr. Ramos had not tried to attack anyone or stab anyone with the edged weapon. In 2022, a jury returned a $4.5 million verdict against Defendant County of San Bernardino and its involved deputies.

(b)     In *M.A., et al. v. County of San Bernardino*, Case No.: 8:20-cv-00567-JFW-SHK, C.D. Cal., plaintiffs alleged that the 2019 fatal shooting of Darrell Allen, Jr. was excessive and unreasonable when deputies intentionally shot Mr. Allen several times without warning. Deputies had responded to a domestic disturbance call and was searching in the area of an apartment complex for Mr. Allen. The deputies located Mr. Allen in the laundry room and ordered Mr. Allen to exit the laundry room with his hands up. It is believed that at some point, Mr. Allen was in possession of a knife, but at the time of the shooting, Mr. Allen's hands were up, open, and empty and Mr. Allen was facing away from the

deputies. At no time prior to the shooting did it appear that Mr. Allen was going to attack or seriously injure the deputies. Mr. Allen was not an immediate threat of death or serious bodily injury. Two deputies were present at the time of the shooting, but one deputy claimed that he did not shoot. Despite several percipient witnesses indicating that they had seen both deputies shoot and there being a discrepancy in the number of bullets fired and the forensic evidence at the scene indicating that more shots had been fired than the weapon round count indicated, an investigator for COUNTY testified that he chose not to take the second deputy's gun into custody and did not do a bullet analysis on the second deputy's gun because the investigator did not want to disbelieve the second deputy or accuse him of lying. The Lethal Force Encounters ("LFE") Review Board makes recommendations to the Sheriff regarding whether the LFE was in policy, whether it was intentional or accidental, whether training and/or policy issues have been addressed appropriately, and whether to close the case pending the results of the District Attorney's review. The LFE Review Board sends the Sheriff a Findings and Recommendations Memorandum. The Sheriff reviews and ultimately approves the findings and recommendations. The shooting of Mr. Allen was found to be not out of policy. In 2021, the case settled for a seven-figure settlement. On information and belief, no deputy was retrained, provided additional training, disciplined, suspended, or terminated as a result of this incident.

(b)     In *Brown v. County of San Bernardino*, case number 5:20-cv-01658, Plaintiff alleged that San Bernardino County Sheriff's

THIRD AMENDED COMPLAINT FOR DAMAGES

Deputies used excessive and unreasonable force when they shot him several times and when he never threatened any person with a weapon or vehicle. Plaintiff was in a moving slow-moving vehicle and no one, including any of the deputies, were in the direct path of the vehicle when deputies shot numerous times into the side of the vehicle. In 2021, the parties settled the case for a high six-figure settlement. Upon information and belief, no deputy was retrained, provided additional training, disciplined, suspended, or terminated as a result of this settlement.

(c)    In *Estate of Merlin Factor v. County of San Bernardino, et al.*, case number 5:14-cv-01289-DMG-AGR(x), Plaintiffs argued that the use of deadly force against the unarmed Merlin Factor was unreasonable. Mr. Factor was a passenger inside a car that had been pulled over. When a deputy opened the passenger door, Mr. Factor stepped out and started to run away. The deputy grabbed Mr. Factor's hand and Mr. Factor wrapped his arms around the deputy. Another deputy tased Mr. Factor and then yelled out "gun," even though Mr. Factor was unarmed. The deputy who had tased Mr. Factor then shot at Mr. Factor while Mr. Factor was halfway in the car. The police reports showed that Mr. Factor was unarmed, and the parties settled the case for a high six-figure settlement.

(d)    In *Ranero v. County of San Bernardino*, Case No. 5:16-cv-02655, C.D. Cal., the COUNTY settled with a man involved in a non-fatal police shooting that resulted in serious injuries including the loss of use of the victim's left leg. The deputies had responded to a domestic disturbance call wherein Luis Ranero was barricaded inside the home. After some time had passed, Mr.

1   Ranero exited the house and was given commands to show his

2   hands. Mr. Ranero complied with commands to show his hands

3   and brought his hands up, with one hand holding a yellow-colored

4   bottle of Muscle Milk. Deputies shot at Mr. Ranero despite Mr.

5   Ranero being unarmed, was complying commands at the time of

6   the shooting, and was not posing a threat prior to or at the time of

7   the shooting. The COUNTY ratified the deputies' conduct,

8   finding the shooting to be "within policy," and failed to

9   reprimand, retrain, or otherwise penalize the deputies for their

10  conduct.

11  (e)  In *Archibald v. County of San Bernardino*, case number 5-16-cv-

12       1128, Plaintiff argued that the involved San Bernardino County

13       Sheriff's deputy used deadly force against the unarmed

14       Nathanael Pickett when he posed no immediate threat. The

15       deputy initially made contact with Mr. Pickett because Mr.

16       Pickett looked at him while crossing a marked crosswalk at

17       night. The deputy followed Mr. Pickett onto the grounds of a

18       motel and attempted to detain Mr. Pickett, despite there being no

19       reasonable suspicion to detain. Mr. Pickett refused to stop and

20       continued to walk away from the deputy. The deputy pursued

21       Mr. Pickett and as Mr. Pickett was attempting to get away, Mr.

22       Pickett tripped and fell. While Mr. Pickett was on the ground, the

23       deputy threatened to tase Mr. Pickett. The deputy then went

24       hands-on with Mr. Pickett with the intention of handcuffing him.

25       When Mr. Pickett resisted, the deputy struck Mr. Pickett several

26       times and a struggled ensued as Mr. Pickett tried to get away.

27       While both were on the ground, with the deputy on top of Mr.

28       Pickett, the deputy pulled out his gun and shot and killed Mr.

1    Pickett. The jury in that case returned a $33.5 million verdict

2    against Defendant County of San Bernardino and the deputy. The

3    COUNTY ratified the deputy's conduct, found the detention and

4    shooting to be "within policy," and failed to reprimand, retrain,

5    or otherwise penalize the deputy for his conduct. The COUNTY

6    negligently retained the deputy following this shooting, which

7    resulted in a subsequent shooting by the same deputy of another

8    unarmed man, for which the COUNTY settled with the victim

9    prior to any litigation.

10    (f)    In *T.M. (Phillips) v. County of San Bernardino, et al.*, case

11    number 5:18-cv-2532-R-PLA, Plaintiff alleged that the shooting

12    of Lajuana Phillips was excessive and unreasonable. A deputy

13    had initially responded to a call regarding a woman who had

14    punched someone at a local business. The deputy made contact

15    with Ms. Phillips and deployed OC spray into the vehicle Ms.

16    Phillips was in when Ms. Phillips refused to exit the vehicle.

17    When Ms. Phillips started to slowly drive away, the deputy shot

18    into the side of the vehicle and killed Ms. Phillips. Neither the

19    deputy nor anyone else was in the pathway of the vehicle when

20    the deputy shot into the vehicle. Ms. Phillips did not pose an

21    immediate threat of death or serious bodily injury when the

22    deputy shot and killed her.

23    (g)    In *Young v. County of San Bernardino, et al.*, case number 5:15-

24    CV- 01102-JGB-SP, Plaintiff argued that the 2014 shooting of

25    Keivon Young was excessive and unreasonable. Deputies,

26    searching for a murder suspect, went to the wrong house. Mr.

27    Young was visiting residents of the house at the time the

28    deputies arrived and did not match the description of the murder

suspect. At some point, the deputies attempted to quietly approach Mr. Young from behind. Upon hearing footsteps, Mr. Young began to turn around and almost simultaneously heard "let me see your hands." As Mr. Young was turning around, the deputies shot Mr. Young and Mr. Young immediately dropped to the floor. While Mr. Young had knives in his waistband, at no point prior to or during the shooting did Mr. Young attempt to reach for his waistband. After Mr. Young fell to the ground, the deputies continued to shoot Mr. Young several times while he was on the ground. In 2016 a jury agreed and awarded a high six-figure verdict in Plaintiff's favor.

67.    By failing to provide adequate training to COUNTY sheriff's deputies, including ESQUIVEL, AL. QUEZADA, RAMIREZ, AM. QUEZADA, DEMARA, JONES, STANLEY, and VAIRIN, COUNTY acted with an intentional, reckless, and callous disregard for Plaintiff's constitutional rights. Defendants DOES 9-10, each of their actions were willful, wanton, oppressive, malicious, fraudulent, and extremely offensive and unconscionable to any person of normal sensibilities.

68.    By reason of the aforementioned acts and omissions, Plaintiff suffered serious bodily injury, humiliation, pain and suffering, disfigurement, and past and future emotional and mental distress, and financial loss.

69.    Accordingly, Defendants COUNTY and DOES 9-10 each are liable to Plaintiff for compensatory damages under 42 U.S.C. § 1983.

70.    Plaintiff seeks compensatory damages for the violations of his rights, including damages for past and future medical expenses, past and future loss of earnings and decreased earning capacity, physical injuries, past and future pain and suffering, emotional and mental distress stemming from the physical injuries, humiliation, and disfigurement.  Plaintiff also seeks punitive damages, costs, and attorney's fees under this claim.

1  //

2  //

3  //

4  //

5  **<u>FIFTH CLAIM FOR RELIEF</u>**

6  **Municipal Liability – Unconstitutional Custom or Policy (42 U.S.C. § 1983)**

7  (Against Defendants COUNTY and DOES 9-10)

8  71.    Plaintiff repeats and realleges each and every allegation in paragraphs 1

9  through 70 of this Complaint with the same force and effect as if fully set forth

10  herein.

11  72.    At all relevant times, Defendants ESQUIVEL, AL. QUEZADA,

12  RAMIREZ, AM. QUEZADA, DEMARA, JONES, STANLEY, and VAIRIN were

13  acting under color of state law.

14  73.    When Defendants ESQUIVEL, AL. QUEZADA, RAMIREZ, AM.

15  QUEZADA, DEMARA, JONES, STANLEY, and VAIRIN detained and arrested

16  Plaintiff, struck Plaintiff with lethal and less-lethal rounds, shot at Plaintiff, held

17  Plaintiff prone against the ground while exerting force and weight on Plaintiff's

18  back for a prolonged period of time, and denied him timely medical attention, they

19  acted pursuant to an expressly adopted official policy/ies or a longstanding

20  practice(s) or custom of the Defendant COUNTY respectively.

21  74.    On information and belief, COUNTY made a formal decision that the

22  use of deadly and non-deadly force against Plaintiff was found to be "within policy"

23  of the COUNTY's Sheriff's Department protocols, notwithstanding that Plaintiff

24  was not an imminent threat to ESQUIVEL, AL. QUEZADA, RAMIREZ, AM.

25  QUEZADA, DEMARA, JONES, STANLEY, and VAIRIN at the moment

26  ESQUIVEL, AL. QUEZADA, RAMIREZ, AM. QUEZADA, DEMARA, JONES,

27  STANLEY, and VAIRIN used deadly and non-deadly force against Plaintiff. This

28

1    manifests a deliberate indifference to the civil rights of the residents of the

2    COUNTY.

3        75.    Defendant COUNTY and DOES 9-10, ratified, acquiesced, and

4    condoned the use of deadly and non-deadly force against Plaintiff by ESQUIVEL,

5    AL. QUEZADA, RAMIREZ, AM. QUEZADA, DEMARA, JONES, STANLEY,

6    and VAIRIN.

7        76.    On information and belief, Defendants ESQUIVEL, AL. QUEZADA,

8    RAMIREZ, AM. QUEZADA, DEMARA, JONES, STANLEY, and VAIRIN were

9    not disciplined, reprimanded, retrained, suspended, or otherwise penalized in

10   connection with the detention, arrest and use of force against Plaintiff, which

11   evidences ratification and acquiescence thereof and thereto.

12       77.    Defendants COUNTY and DOES 9-10, together with other COUNTY

13   policymakers and supervisors, maintained, inter alia, the following unconstitutional

14   customs, practices, and policies:

15           (a)   Using excessive force, including excessive deadly force;

16           (b)   Providing inadequate training regarding the use of force,

17                 including deadly force;

18           (c)   Employing and retaining as officers individuals whom Defendant

19                 COUNTY at all times material herein knew or reasonably should

20                 have known had dangerous propensities for abusing their

21                 authority and for using excessive force;

22           (d)   Inadequately supervising, training, controlling, assigning, and

23                 disciplining COUNTY sheriff's deputies, and other personnel,

24                 whom Defendant COUNTY knew or in the exercise of

25                 reasonable care should have known had the aforementioned

26                 propensities and character traits;

27

28

(e)   Maintaining grossly inadequate procedures for reporting, supervising, investigating, reviewing, disciplining and controlling misconduct by COUNTY sheriff's deputies;

(f)   Failing to adequately discipline COUNTY sheriff's deputies for the above-referenced categories of misconduct, including "slaps on the wrist," discipline that is so slight as to be out of proportion to the magnitude of the misconduct, and other inadequate discipline that is tantamount to encouraging misconduct;

(g)   Announcing that unjustified shootings are "within policy," including shootings that were later determined in court to be unconstitutional;

(h)   Even where shootings are determined in court to be unconstitutional, refusing to discipline, terminate, or retrain the officers involved;

(i)   Encouraging, accommodating, or facilitating a "blue code of silence," "blue shield," "blue wall," "blue curtain," "blue veil," or simply "code of silence," pursuant to which police officers do not report other officers' errors, misconduct, or crimes. Pursuant to this code of silence, if questioned about an incident of misconduct involving another officer, while following the code, the officer being questioned will claim ignorance of the other officers' wrongdoing;

(j)   Maintaining a policy of inaction and an attitude of indifference towards soaring numbers of police shootings, including by failing to discipline, retrain, investigate, terminate, and recommend officers for criminal prosecution who participate in shootings of unarmed people.

78.     It is the policy, custom, and practice of Defendant COUNTY to <u>not</u> objectively investigate complaints of previous incidents of wrongful shootings, excessive use of force, including deadly force, illegal arrests, falsification of police reports, and instead, to officially claim that such incidents are justified and proper.

79.     The policies, customs, and practices of Defendant COUNTY do in fact encourage COUNTY sheriff's deputies such as ESQUIVEL, AL. QUEZADA, RAMIREZ, AM. QUEZADA, DEMARA, JONES, STANLEY, and VAIRIN to believe that wrongful shootings, excessive use of deadly and non-deadly force against residents, illegal arrests, fabrication of police reports, is permissible and will be permitted by Defendant COUNTY. Defendants ESQUIVEL, AL. QUEZADA, RAMIREZ, AM. QUEZADA, DEMARA, JONES, STANLEY, and VAIRIN were aware of the policies, customs, and practices of Defendant COUNTY and used excessive force against Plaintiff. These policies and customs of the COUNTY were the driving force that caused ESQUIVEL, AL. QUEZADA, RAMIREZ, AM. QUEZADA, DEMARA, JONES, STANLEY, and VAIRIN to use excessive force against Plaintiff.

80.     Other systemic deficiencies, policies, customs, and practices which indicated, and continue to indicate, a deliberate indifference to the violations of the civil rights by the COUNTY sheriff's deputies, such as ESQUIVEL, AL. QUEZADA, RAMIREZ, AM. QUEZADA, DEMARA, JONES, STANLEY, and VAIRIN, that Defendant COUNTY was aware of, and has condoned and ratified include:

        (a)    Preparation of investigative reports designed to vindicate the use of excessive use of force, regardless of whether such force was justified;

        (b)    Preparation of investigative reports which uncritically rely solely on the word of sheriff's deputies and police officers involved in

1  the assault, battery, excessive use of force incidents and which

2  systematically fail to credit testimony by non-police witnesses;

3  (c)  Preparation of investigative reports which omit factual

4  information and physical evidence which contradicts the

5  accounts of the officers involved;

6  (d)  Issuance of public statements exonerating officers involved in

7  such incidents prior to the completion of investigations of the

8  excessive use of force;

9  (e)  Failure to objectively and independently review investigative

10  reports by responsible superior officers for accuracy or

11  completeness and acceptance of conclusions which are

12  unwarranted by the evidence of the wrongful shooting, assault,

13  excessive use of deadly force, or which contradict such evidence.

14  81.  Defendants COUNTY and DOES 9-10, together with various other

15  officials, whether named or unnamed, had either actual or constructive knowledge

16  of the deficient policies, practices and customs alleged in the paragraphs above.

17  Despite having knowledge as stated above, these defendants condoned, tolerated and

18  through actions and inactions thereby ratified such policies.  Said defendants also

19  acted with deliberate indifference to the foreseeable effects and consequences of

20  these policies with respect to the constitutional rights of Plaintiff and other

21  individuals similarly situated.

22  82.  By perpetrating, sanctioning, tolerating and ratifying the outrageous

23  conduct and other wrongful acts, COUNTY and DOES 9-10 acted with intentional,

24  reckless, and callous disregard for the life and constitutional rights of Plaintiff.

25  Furthermore, the policies, practices, and customs implemented, maintained, and still

26  tolerated by Defendants COUNTY and DOES 9-10 were affirmatively linked to and

27  were a significantly influential force behind the injuries of Plaintiff.

28

83.    The following are only a few examples of cases where San Bernardino County Sheriff's Department Deputies were not disciplined, reprimanded, retained, suspended, or otherwise penalized in connection with the underlying acts giving rise to the below lawsuits, which indicates that the COUNTY routinely ratifies such behavior, fails to train its Deputies, and maintains a practice of allowing such behavior:

(a)    In *V.R. v. County of San Bernardino, et al.*, case number 5:19-cv-01023-JGB-SP, Plaintiffs argued that the use of less-lethal and lethal munitions against decedent, Juan Ramos, was unreasonable and excessive. Prior to the uses of force, officers had responded to a call for reckless driving and had engaged in a vehicle pursuit with Mr. Ramos. The pursuit ultimately ended in a dead-end street where officers attempted to extract Mr. Ramos out of his vehicle. The officers had information that Mr. Ramos was in possession of an edged weapon. The officers broke the vehicle's front passenger window. When Mr. Ramos momentarily exited the vehicle, the officers deployed three beanbag rounds at him and Mr. Ramos reentered his vehicle. A few seconds later, Mr. Ramos exited his vehicle and ran away from the vehicle and officers with the edged weapon in his hand. As he was running in the direction of some civilians in a nearby front yard, an officer shot at Mr. Ramos in the back. Prior to the shooting, Mr. Ramos had not tried to attack anyone or stab anyone with the edged weapon. In 2022, a jury returned a $4.5 million verdict against Defendant County of San Bernardino and its involved deputies.

(b)    In *M.A., et al. v. County of San Bernardino*, Case No.: 8:20-cv-00567-JFW-SHK, C.D. Cal., plaintiffs alleged that the 2019 fatal

shooting of Darrell Allen, Jr. was excessive and unreasonable when deputies intentionally shot Mr. Allen several times without warning. Deputies had responded to a domestic disturbance call and was searching in the area of an apartment complex for Mr. Allen. The deputies located Mr. Allen in the laundry room and ordered Mr. Allen to exit the laundry room with his hands up. It is believed that at some point, Mr. Allen was in possession of a knife, but at the time of the shooting, Mr. Allen's hands were up, open, and empty and Mr. Allen was facing away from the deputies. At no time prior to the shooting did it appear that Mr. Allen was going to attack or seriously injure the deputies. Mr. Allen was not an immediate threat of death or serious bodily injury. Two deputies were present at the time of the shooting, but one deputy claimed that he did not shoot. Despite several percipient witnesses indicating that they had seen both deputies shoot and there being a discrepancy in the number of bullets fired and the forensic evidence at the scene indicating that more shots had been fired than the weapon round count indicated, an investigator for COUNTY testified that he chose not to take the second deputy's gun into custody and did not do a bullet analysis on the second deputy's gun because the investigator did not want to disbelieve the second deputy or accuse him of lying. The Lethal Force Encounters ("LFE") Review Board makes recommendations to the Sheriff regarding whether the LFE was in policy, whether it was intentional or accidental, whether training and/or policy issues have been addressed appropriately, and whether to close the case pending the results of the District Attorney's review. The LFE Review Board sends the Sheriff a

Findings and Recommendations Memorandum. The Sheriff reviews and ultimately approves the findings and recommendations. The shooting of Mr. Allen was found to be not out of policy. In 2021, the case settled for a seven-figure settlement. On information and belief, no deputy was retrained, provided additional training, disciplined, suspended, or terminated as a result of this incident.

(c)    In *Brown v. County of San Bernardino*, case number 5:20-cv-01658, Plaintiff alleged that San Bernardino County Sheriff's Deputies used excessive and unreasonable force when they shot him several times and when he never threatened any person with a weapon or vehicle. Plaintiff was in a moving slow-moving vehicle and no one, including any of the deputies, were in the direct path of the vehicle when deputies shot numerous times into the side of the vehicle. In 2021, the parties settled the case for a high six-figure settlement. Upon information and belief, no deputy was retrained, provided additional training, disciplined, suspended, or terminated as a result of this settlement.

(d)    In *Estate of Merlin Factor v. County of San Bernardino, et al.*, case number 5:14-cv-01289-DMG-AGR(x), Plaintiffs argued that the use of deadly force against the unarmed Merlin Factor was unreasonable. Mr. Factor was a passenger inside a car that had been pulled over. When a deputy opened the passenger door, Mr. Factor stepped out and started to run away. The deputy grabbed Mr. Factor's hand and Mr. Factor wrapped his arms around the deputy. Another deputy tased Mr. Factor and then yelled out "gun," even though Mr. Factor was unarmed. The deputy who had tased Mr. Factor then shot at Mr. Factor while

1     Mr. Factor was halfway in the car. The police reports showed

2     that Mr. Factor was unarmed, and the parties settled the case for

3     a high six-figure settlement.

4     (e)    In *Ranero v. County of San Bernardino*, Case No. 5:16-cv-

5     02655, C.D. Cal., the COUNTY settled with a man involved in a

6     non-fatal police shooting that resulted in serious injuries

7     including the loss of use of the victim's left leg. The deputies had

8     responded to a domestic disturbance call wherein Luis Ranero was

9     barricaded inside the home. After some time had passed, Mr.

10    Ranero exited the house and was given commands to show his

11    hands. Mr. Ranero complied with commands to show his hands

12    and brought his hands up, with one hand holding a yellow-colored

13    bottle of Muscle Milk. Deputies shot at Mr. Ranero despite Mr.

14    Ranero being unarmed, was complying commands at the time of

15    the shooting, and was not posing a threat prior to or at the time of

16    the shooting. The COUNTY ratified the deputies' conduct,

17    finding the shooting to be "within policy," and failed to

18    reprimand, retrain, or otherwise penalize the deputies for their

19    conduct.

20    (f)    In *Archibald v. County of San Bernardino*, case number 5-16-cv-

21    1128, Plaintiff argued that the involved San Bernardino County

22    Sheriff's deputy used deadly force against the unarmed

23    Nathanael Pickett when he posed no immediate threat. The

24    deputy initially made contact with Mr. Pickett because Mr.

25    Pickett looked at him while crossing a marked crosswalk at

26    night. The deputy followed Mr. Pickett onto the grounds of a

27    motel and attempted to detain Mr. Pickett, despite there being no

28    reasonable suspicion to detain. Mr. Pickett refused to stop and

continued to walk away from the deputy. The deputy pursued Mr. Pickett and as Mr. Pickett was attempting to get away, Mr. Pickett tripped and fell. While Mr. Pickett was on the ground, the deputy threatened to tase Mr. Pickett. The deputy then went hands-on with Mr. Pickett with the intention of handcuffing him. When Mr. Pickett resisted, the deputy struck Mr. Pickett several times and a struggled ensued as Mr. Pickett tried to get away. While both were on the ground, with the deputy on top of Mr. Pickett, the deputy pulled out his gun and shot and killed Mr. Pickett. The jury in that case returned a $33.5 million verdict against Defendant County of San Bernardino and the deputy. The COUNTY ratified the deputy's conduct, found the detention and shooting to be "within policy," and failed to reprimand, retrain, or otherwise penalize the deputy for his conduct. The COUNTY negligently retained the deputy following this shooting, which resulted in a subsequent shooting by the same deputy of another unarmed man, for which the COUNTY settled with the victim prior to any litigation.

(g)   In *T.M. (Phillips) v. County of San Bernardino, et al.*, case number 5:18-cv-2532-R-PLA, Plaintiff alleged that the shooting of Lajuana Phillips was excessive and unreasonable. A deputy had initially responded to a call regarding a woman who had punched someone at a local business. The deputy made contact with Ms. Phillips and deployed OC spray into the vehicle Ms. Phillips was in when Ms. Phillips refused to exit the vehicle. When Ms. Phillips started to slowly drive away, the deputy shot into the side of the vehicle and killed Ms. Phillips. Neither the deputy nor anyone else was in the pathway of the vehicle when

1    the deputy shot into the vehicle. Ms. Phillips did not pose an
2    immediate threat of death or serious bodily injury when the
3    deputy shot and killed her.

4    (h)    In *Young v. County of San Bernardino, et al.*, case number 5:15-
5           CV- 01102-JGB-SP, Plaintiff argued that the 2014 shooting of
6           Keivon Young was excessive and unreasonable. Deputies,
7           searching for a murder suspect, went to the wrong house. Mr.
8           Young was visiting residents of the house at the time the
9           deputies arrived and did not match the description of the murder
10          suspect. At some point, the deputies attempted to quietly
11          approach Mr. Young from behind. Upon hearing footsteps, Mr.
12          Young began to turn around and almost simultaneously heard
13          "let me see your hands." As Mr. Young was turning around, the
14          deputies shot Mr. Young and Mr. Young immediately dropped to
15          the floor. While Mr. Young had knives in his waistband, at no
16          point prior to or during the shooting did Mr. Young attempt to
17          reach for his waistband. After Mr. Young fell to the ground, the
18          deputies continued to shoot Mr. Young several times while he
19          was on the ground. In 2016 a jury agreed and awarded a high six-
20          figure verdict in Plaintiff's favor.

21   84.    Furthermore, the policies, practices, and customs implemented and
22   maintained and still tolerated by Defendant COUNTY and DOES 9-10 were
23   affirmatively linked to and were significantly influential force behind the injuries of
24   Plaintiff.

25   85.    By reason of the aforementioned acts and omissions, Plaintiff suffered
26   serious bodily injury, humiliation, pain and suffering, disfigurement, and past and
27   future emotional and mental distress, and financial loss.

28

86.     Accordingly, Defendants COUNTY DOES 9-10 each are liable to Plaintiff for compensatory damages under 42 U.S.C. § 1983.

87.     Plaintiff seeks compensatory damages for the violations of his rights, including damages for past and future medical expenses, past and future loss of earnings and decreased earning capacity, physical injuries, past and future pain and suffering, emotional and mental distress stemming from the physical injuries, humiliation, and disfigurement.  Plaintiff also seeks punitive damages, costs, and attorney's fees under this claim.

1
## **PRAYER FOR RELIEF**

2      WHEREFORE, Plaintiff JAMES WRIGHT, requests entry of judgment in his

3 favor and against Defendants the County of San Bernardino, Travis Esquivel,

4 Alejandro Quezada, Sergio Ramirez, Aminidab Quezada, Francisco Demara,

5 Deshaun Jones, Cameron Stanley, Garrett Vairin, and DOES 9-10, inclusive, as

6 follows:

7           A.    For compensatory damages in an amount to be proven at trial,

8                 including damages for his serious physical injuries, for his pain

9                 and suffering, for past and future medical expenses, for past and

10                future financial loss, and past and future mental and emotional

11                distress;

12          B.    For punitive damages against the individual defendants in an

13                amount to be proven at trial;

14          C.    For statutory damages;

15          D.    For interest;

16          E.    For reasonable costs of this suit and attorneys' fees; and

17          F.    For such further other relief as the Court may deem just, proper,

18                and appropriate.

19

20 DATED:  May 7, 2025              LAW OFFICES OF DALE K. GALIPO

21

22

23                          By_____*/s/ Hang D. Le*_____
                                  Dale K. Galipo
24                                Hang D. Le
                                  Attorneys for Plaintiff

25

26

27

28

THIRD AMENDED COMPLAINT FOR DAMAGES

1

## **<u>DEMAND FOR JURY TRIAL</u>**

2          Plaintiff hereby demands a trial by jury.

3

4    DATED:  May 7, 2025              LAW OFFICES OF DALE K. GALIPO

5

6

7                              By_____*/s/ Hang D. Le*_____
                                  Dale K. Galipo
8                                  Hang D. Le
                                  Attorneys for Plaintiff
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28