LAW OFFICES OF DALE K. GALIPO
Dale K. Galipo, Esq. (SBN 144074)
dalekgalipo@yahoo.com
Hang D. Le, Esq. (SBN 293450)
hlee@galipolaw.com
21800 Burbank Boulevard, Suite 310
Woodland Hills, CA  91367
Telephone:   (818) 347-3333
Facsimile:    (818) 347-4118

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES WRIGHT,<br><br>               Plaintiff,<br><br>         vs.<br><br>COUNTY OF SAN BERNARDINO;<br>TRAVIS ESQUIVEL; ALEJANDRO<br>QUEZADA; SERGIO RAMIREZ;<br>AMINIDAB QUEZADA; FRANCISCO<br>DEMARA; DESHAUN JONES;<br>CAMERON STANLEY; GARRETT<br>VAIRIN; and DOES 9-10, inclusive,<br><br>               Defendants. | Case No. 5:24-cv-01123-JLS-JC<br><br>*Honorable Josephine L. Staton*<br>*Hon. Mag. Judge Jacqueline Chooljian*<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO EXCLUDE CERTAIN OPINIONS OF PLAINTIFF'S EXPERT RICHARD BRYCE**<br><br>Date:     April 10, 2026<br>Time:     10:30 a.m.<br>Dept:     8A |

---

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO EXCLUDE PLAINTIFF'S EXPERT RICHARD BRYCE

### MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

This civil rights action arises from the unlawful detention and use of excessive force against James Wright ("Plaintiff") by County of San Bernardino Sheriff's Deputy Deshaun Jones on June 7, 2022. Deputy Jones deployed two shotgun beanbag rounds at Plaintiff, in close range—less than the range advised by County of San Bernardino Sheriff's Department policies and the manufacturer's recommended range deployment. One of the shotgun beanbag rounds struck Plaintiff in the right pectoral area, and one of the lead shots from the beanbag round perforated Plaintiff's chest and lung, causing serious injury to Plaintiff. At the time of the use of force against Plaintiff, Plaintiff did not pose a threat to anyone, including an imminent threat of death or serious bodily injury.

Defendant Deshuan Jones now brings this Motion to Exclude Certain Opinions of Plaintiff's Expert Richard Bryce. For the reasons stated in this opposition, Plaintiff opposes Defendant's Motion in its entirety.

### II.    ARGUMENT

A. <u>Mr. Bryce's Opinions Regarding the Beanbag Shotgun are Admissible and Helpful to the Jury on Relevant Police Practices, Training, and Procedures</u>

Defendant's argument that Mr. Bryce should be precluded from offering opinions regarding Deputy Jones' deployments of the beanbag shotgun because of his lack of experience with the beanbag shotgun improperly conflates Mr. Bryce's opinions as beanbag shotgun expertise rather than police practices expertise. Mr. Bryce does not hold himself out to be an expert on the features and use of the beanbag shotgun. Rather, he is a police practices expert and has offered opinions regarding the utilization of the beanbag shotgun in the context of appropriate police practices and training. And as a police practice expert with over 33 years of experience in law enforcement, who has consulted as a police practices expert in

1

almost 100 cases, Mr. Bryce is qualified to render such opinions. (*See* Ex. A to Gustafson Decl., Bryce Report at 8-14).

Based on his review of the materials in this case, including the County of San Bernardino Sheriff's Department policies regarding the utilization and deployment of the less-lethal shotgun with drag-stabilized beanbag munitions, the manufacturer's guidelines regarding the beanbag munitions, the deputies' testimony regarding their training in deploying the beanbag shotgun, and general concepts regarding the use of force included in California POST, Mr. Bryce opined that assuming Deputy Jones deployed the beanbag shotgun at a distance of less than 20 feet—less than the optimal deployment distance advised by the Sheriff's Department and the manufacturer—it would be contrary to police practices and training under the totality of the circumstances. (*See* Ex. A to Gustafson Decl., Bryce Report at 4-8). These opinions are further supported by the fact that the deputies did not have any information that Plaintiff was violent or was associated with or in possession of a firearm or weapon, and Plaintiff never displayed any aggressive, threatening, or assaultive behavior when the deputies confronted him once the pursuit had terminated.[1] (*See* Ex. A to Gustafson Decl., Bryce Report at 5). Accordingly, Mr. Bryce's opinions are admissible and helpful to the jury on relevant police practices, training, and procedures. *See Valtierra v. City of Los Angeles*, 99 F. Supp. 3d 1190, 1197 (C.D. Cal. 2015) (finding that although the police practices

---

[1] This is not a controversial opinion as even Defendant's police practices expert, Kenneth Hubbs, testified that according the POST standards, the level of resistance under which the deployment of the beanbag shotgun would be appropriate requires that the suspect either be combative or assaultive, or alternatively, passively resistive but armed with a weapon, in order to deploy the beanbag shotgun to gain compliance. (Ex. 1 to Le Decl., Hubbs Dep 16:23-17:8). Mr. Hubbs further testified that based on the information the deputies had, one option the deputies had was to approach Mr. Wright's vehicle and go hands-on with him. (Ex. 1 to Le Decl., Hubbs Dep. 47:8-48:23).

2

expert did not qualify as an expert on the use of the taser, he "may opine on whether tasers may cause bodily injury and when taser deployment is an appropriate use of force" based on his expertise in POST and other law enforcement standards); *Johnson v. City of San Jose*, No. 21-CV-01849-BLF, 2023 WL 8852489, at *3–4 (N.D. Cal. Dec. 21, 2023) (although the police practices expert was not an expert in less lethal projectiles, projectile impact weapons, or crowd control, he could testify on those topics to the extent his testimony was premised on his experience concerning police practices standards); *Godinez v. Huerta*, No. 16-CV-0236-BAS-NLS, 2018 WL 2018048, at *4 (S.D. Cal. May 1, 2018) (police practices expert could offer opinions regarding the taser to the extent those opinions were premised on his experience concerning police training standards and policies).

B. Mr. Bryce's Opinions Regarding the Level of Force Deployed are Admissible

"A beanbag shotgun is a twelve-gauge shotgun loaded with beanbag rounds, which consist of lead shot contained in a cloth sack." *Glenn v. Washington Cnty.*, 673 F.3d 864, 871 (9th Cir. 2011) (cleaned up) (citing *Deorle v. Rutherford*, 272 F.3d 1272, 1277 (9th Cir.2001)). "Although bean bag guns are not designed to cause serious injury or death, a bean bag gun is considered a 'less-lethal' weapon, as opposed to a non-lethal weapon, because the bean bags can cause serious injury or death if they hit a relatively sensitive area of the body, such as the eyes, throat, temple, or groin." *Id.* (cleaned up). "[T]he euphemism 'beanbag' grossly underrates the dangerousness of this projectile, which can kill a person if it strikes his head or the left side of his chest at a range of under fifty feet." *Id.* (cleaned up) (citing *Deorle*, 272 F.3d at 1279 & n.13).

Law enforcement agencies have acknowledged the potential utilization of the beanbag shotgun as deadly force, with the Las Vegas Metropolitan Police Department's police categorizing the use of the beanbag shotgun as lethal force if fired from less than fifteen feet. *See Figueroa v. Gill*, No. 2:22-CV-00477-ART-

3

DJA, 2024 WL 5212791, at *6 (D. Nev. Dec. 20, 2024), *reconsideration denied sub nom. Figueroa v. Gil*, No. 2:22-CV-00477-ART-DJA, 2025 WL 1880242 (D. Nev. Apr. 14, 2025). Other circuits have acknowledged that firing a beanbag shotgun from close range can cause serious injury or death and amount to deadly force. *See Conlon v. Scaltreto*, 158 F.4th 211, 228 (1st Cir. 2025); *Knight v. Forsyth Cnty., Ga.*, 523 F. App'x 599 (11th Cir. 2013) (per curiam) (use of a beanbag launcher from six feet away at the suspect's head constituted deadly force); *Mercado v. City of Orlando*, 407 F.3d 1152, 1160–61 (11th Cir. 2005) (use of the beanbag gun from three feet away was deadly force).

Courts have recognized that whether an officer's use of force amounts to deadly force is generally a question of fact to be determined by the jury. *See Anderson v. Avond*, 631 F. Supp. 3d 721, 732–33 (D. Minn. 2022) (whether an officer's use of force in a given set of circumstances amounts to deadly force is a fact-dependent inquiry); *Omdahl v. Lindholm*, 170 F.3d 730, 733-34 (7th Cir. 1999) (whether the use of the beanbag rounds constituted deadly force was a question of fact); *Marks v. Bauer*, 107 F.4th 840, 849–50 (8th Cir. 2024), cert. granted, judgment vacated on other grounds, 145 S. Ct. 2733, 222 L. Ed. 2d 1010 (2025) ("we have previously noted that less-lethal force can amount to deadly force depending on the situation"). Thus, Mr. Bryce's opinion that Deputy Jones' deployment of the beanbag round at a distance of less than 20 feet and at the chest of Plaintiff amounts to deadly force is not a legal conclusion.[2]

---

[2] Defendant argues that there is no support for Mr. Bryce's opinion because his report does not specifically recount testimony regarding target areas and Mr. Bryce supposedly conceded he did not know where Plaintiff was hit. Mr. Bryce's omission of specific mention of evidence regarding where Plaintiff was struck does not mean he did not have any evidence on that topic. Mr. Bryce listed under evidence reviewed, among other things, Deputy Jones' deposition (Ex. A to Gustafson Decl., Bryce Report at 2), in which Deputy Jones testified that his second beanbag
(footnote continued)

"'It is well-established…that expert testimony concerning an ultimate issue is not per se improper.'" *Hangarter v. Provident Life & Acc. Ins. Co.*, 373 F.3d 998, 1016 (9th Cir. 2004) (citing *Mukhtar v. Cal. State Univ., Hayward*, 299 F.3d 1053, 1066 n. 10 (9th Cir.2002)). Rule 704(a) of the Federal Rules of Evidence provides that expert testimony that is "otherwise admissible is not objectional because it embraces an ultimate issue to be decided by the trier of fact." "Indeed, a witness may properly be called upon to aid the jury in understanding the facts in evidence even though reference to those facts is couched in legal terms." *Hangarter*, 373 F.3d at 1017. Thus, "expert witnesses can testify to the ultimate issue to be decided by the jury, [but] they may not testify to legal conclusions that are intertwined with the ultimate issue." *A.B. v. Cnty. of San Diego*, No. 18CV1541-MMA-LL, 2020 WL 4431982, at *5 (S.D. Cal. July 31, 2020). Courts have interpreted this to mean that a police practices expert may not offer opinions regarding the reasonableness of an officer's actions or whether an officer's use of force was excessive or objectively reasonable. *See, e.g., Dibbern v. City of Bakersfield*, No. 1:22-CV-00723-CDB, 2024 WL 3993196, at *12 (E.D. Cal. Aug. 29, 2024); *A.B. v. Cnty. of San Diego*, No. 18CV1541-MMA-LL, 2020 WL 4431982, at *5 (S.D. Cal. July 31, 2020); *Morgan v. City of Los Angeles*, No. 217CV06693VAPJEMX, 2020 WL 6048831, at *4 (C.D. Cal. June 23, 2020).

Here, Mr. Bryce does not offer any opinions regarding whether Deputy Jones' deployments of the beanbag rounds were excessive or objectively unreasonable. He is simply opining that, based on standard police training and practices, the Sheriff's

---

deployment struck Plaintiff on the right side of Plaintiff's chest (Ex. 2 to Le Decl., Jones Dep. 60:21-61:7). Additionally, Defendant mischaracterizes Mr. Bryce's deposition testimony. Mr. Bryce does not testify that he did not know where the beanbag rounds struck Plaintiff, but that he did not intend to offer any opinions regarding the actual location of the injury. (Ex. B to Gustafson Decl., Bryce Report at 42:3-43:12).

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO EXCLUDE PLAINTIFF'S EXPERT RICHARD BRYCE

Department policies, and Deputy Jones' own training, that shooting a subject at close range in the chest could be considered deadly force. (Ex. A to Gustafson Decl., Bryce Report at 6-7). This opinion is consistent with generally accepted police practices and training, as even Defendant's police practices expert, Kenneth Hubbs, testified that Deputy Jones' deployment of the beanbag round at a distance of less than 20 feet was "potentially lethal force." (Ex. 1 to Le Decl., Hubbs Dep. 21:25-22:11). Defendant further mischaracterizes Mr. Bryce's testimony regarding the deployment of the beanbag round at less than 20 feet. Mr. Bryce does not opine that such deployment constitutes a *substantial* risk of death or serious bodily injury (although it can be surmised, based on the evidence in this case, that it does because such deployment can be considered deadly force or "potentially lethal force"). Rather, Mr. Bryce simply states that based on his review of the materials, it is his understanding that the deployment at less than 20 feet substantially *increases* the risk of serious bodily injury or death. (Ex. B to Gustafson Decl., Bryce Dep. 23:3-24:16). Defendant's remaining arguments regarding Mr. Bryce's testimony go to the weight of his testimony rather than its admissibility. *See Johnson v. City of San Jose*, No. 21-CV-01849-BLF, 2023 WL 8852489, at *3–4 (N.D. Cal. Dec. 21, 2023) ("Defendants' argument as to the evidentiary support for [the police practices expert's] opinions go to the weight of his testimony, rather than its admissibility.").

## III.   CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court deny Defendant's Motion to Exclude Certain Opinions of Plaintiff's Expert Richard Bryce in its entirety.

//

//

//

//

//

DATED:  March 20, 2026        LAW OFFICES OF DALE K. GALIPO


By_____*/s/ Hang D. Le*_____
     Dale K. Galipo
     Hang D. Le
     Attorneys for Plaintiff

7

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO EXCLUDE PLAINTIFF'S EXPERT RICHARD BRYCE

**<u>Certificate of Compliance</u>**

The undersigned, counsel of record for Plaintiff James Wright, certifies that this memorandum contains 1,727 words, which complies with the 7,000 word limit of L.R. 11-6.1.

DATED: March 20, 2026        LAW OFFICES OF DALE K. GALIPO

By _____*/s/ Hang D. Le*_____
     Dale K. Galipo
     Hang D. Le
     Attorneys for Plaintiff